THOMSON ELECTRIC WELDING COMPANY *vs.*
COMMONWEALTH.

Suffolk.    November 7, 1930. — May 26, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Tax*, Corporation, Excise.    *Constitutional Law.*

The aim of G. L. c. 63, § 32, as amended by St. 1927, c. 258, § 3; G. L. c. 63, § 30, paragraph 5, as amended by St. 1925, c. 265, § 1, was to levy an excise upon the privilege of doing business as a corporation, and any burden upon income received by a Massachusetts corporation from royalties on patents was fortuitous and incidental to the measure of the lawful excise levied on that privilege.

Such statutes are not unconstitutional as taxing income received from royalties received for patents granted by the United States.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on April 14, 1930, under G. L. c. 63, § 77, for abatement of an excise tax.

The respondent demurred, and the case was reserved by *Wait*, J., for determination by the full court.

*C. F. Lovejoy*, Assistant Attorney General, for the Commonwealth.

*S. L. Kaplan*, for the petitioner.

RUGG, C.J.    This is a petition for the abatement of an excise assessed upon a domestic corporation for the privilege of transacting business as a corporation within and under the protection of this Commonwealth.    It is based upon the contention that so much of the petitioner's income as was derived from royalties received from patents granted by the United States could not under the Federal Constitution be considered in computing the net income by which the excise was in part measured.    The respondent demurred. The case was reserved upon the pleadings.    All facts well pleaded in the petition must be taken to be true for the purposes of this decision.    The proceeding is entitled "Petition for Abatement of Excise Tax under General Laws, Chapter 63, Section 77."

The petitioner is a corporation organized under the laws of this Commonwealth for the purpose of carrying on business, with its principal place of business at Lynn within this Commonwealth. On March 25, 1929, it duly filed with the commissioner of corporations and taxation the excise tax return for the fiscal year 1928 required of it in conformity with G. L. c. 63, as amended, and the rules and regulations of the commissioner. The petitioner was the owner of certain patents granted by the United States. It received during the fiscal year 1928 royalties from licenses under these patents, which were considered in the computation of its net income on which the excise was levied.

The pertinent statutes are these: G. L. c. 63, § 32, as amended by St. 1927, c. 258, § 3: "Except as otherwise provided in section thirty-four, every domestic business corporation shall pay annually, with respect to the carrying on or doing of business by it, an excise equal to the sum of the following, provided, that every such corporation shall pay annually a total excise not less in amount than one twentieth of one per cent of the fair value of its capital stock on the day fixed for determination of the value of its corporate excess: — (1) An amount equal to five dollars per thousand upon the value of its corporate excess. (2) An amount equal to two and one half per cent of its net income determined to be taxable in accordance with the provisions of this chapter."; G. L. c. 63, § 30, cl. 5, as amended by St. 1925, c. 265, § 1: "5. 'Net income', except as otherwise provided in sections thirty-four and thirty-nine, the net income for the taxable year as required to be returned by the corporation to the federal government under the federal revenue act applicable to the period, adding thereto any net losses as defined by said federal revenue act that have been deducted, and, in the case of a domestic business corporation, such interest and dividends, not so required to be returned as net income, as would be taxable if received by an inhabitant of this commonwealth; less, both in the case of a domestic business corporation and of a foreign corporation, interest, so required to be returned, which is received upon bonds, notes and certificates of in-

debtedness of the United States." The exceptions stated in these quoted provisions have no relevancy to the question here presented.

The force and validity of these sections of the governing statute have not been in any degree affected by the ineffectual attempt by the Legislature to amend by an act stricken down by *Macallen Co.* v. *Massachusetts*, 279 U. S. 620, as contrary to the Federal Constitution. The reasons were given at length with adequate review of authorities in *Opinion of the Justices*, 269 Mass. 611. Those reasons are here adopted and affirmed. The contrary has not been argued. The statutes make no mention of royalties from patents and contain no provision for the deduction or omission of sums received by the corporation for royalties on patents owned by it in computing the amount of the excise. The sole question is the constitutionality of the statutes under the Constitution of the United States. The language of the statutes is entirely general and in no sense specific save in the express exemption of income from bonds, notes and certificates of indebtedness of the United States.

Plainly, income received from royalties on patents cannot be taxed as income to an individual recipient. *Rockwood* v. *Commissioner of Corporations & Taxation*, 257 Mass. 572; affirmed *sub nomine, Long* v. *Rockwood*, 277 U. S. 142. The tax here assailed is not a tax on an individual and it is not a tax on income. It is an excise upon a domestic corporation for the privilege of carrying on business as a corporation. The distinction between an excise upon the privilege of carrying on business as a corporation and a tax upon personal property, such as is a tax on income under our Constitution and laws, is vital and fundamental under the Constitution of this Commonwealth. It has long been recognized and applied in decisions of this court. So far as this court has jurisdiction to interpret the meaning and declare the purpose of the statute under which this excise was laid, it is not now open to discussion that an excise is thereby levied upon the privilege of doing business as a corporation and not a tax upon the property or income of the corporation. The General Court has asserted by § 32,.

as amended, that it is an excise. The validity of the tax under c. 1, § 1, art. 4 of the Constitution of this Commonwealth can be upheld only on the ground that it is in truth an excise and not a property tax. By art. 4 all property taxes must be "proportional," but excises may be levied upon principles not proportional. This excise is not proportional. The general method of taxation of corporate franchises for a long time in this Commonwealth has not differed from that embodied in the statute here attacked. It has always been held to be an excise and not a property tax. *Commonwealth* v. *People's Five Cents Savings Bank,* 5 Allen, 428. *S. S. White Dental Manuf. Co.* v. *Commonwealth,* 212 Mass. 35, 38–41, where numerous earlier cases are cited and reviewed, and the history of the distinction under our Constitution between an excise and a property tax is traced. *Farr Alpaca Co.* v. *Commonwealth,* 212 Mass. 156, 159. *Eaton, Crane & Pike Co.* v. *Commonwealth,* 237 Mass. 523, 527–528. The present statutes have been declared to require excise rather than property taxes in *Springdale Finishing Co.* v. *Commonwealth,* 242 Mass. 37, 40, *National Leather Co.* v. *Commonwealth,* 256 Mass. 419, affirmed in *National Leather Co.* v. *Massachusetts,* 277 U. S. 413, *Carlos Ruggles Lumber Co.* v. *Commonwealth,* 261 Mass. 445, 449, *Carlos Ruggles Lumber Co.* v. *Commonwealth,* 261 Mass. 450, 453, *Alpha Portland Cement Co.* v. *Massachusetts,* 268 U. S. 203, 216. It may be added that this system of taxation of corporations by an excise upon the privilege of doing business as a corporation has stood under the shelter of express decisions of the Supreme Court of the United States upholding its validity even though factors free from direct taxation by the States under the Constitution of the United States were included in calculating the amount of the excise. *Hamilton Co.* v. *Massachusetts,* 6 Wall. 632. *Provident Institution* v. *Massachusetts,* 6 Wall. 611.

The nature of the tax in any particular case must be determined by its operation rather than its specially descriptive phrase. The contentions of the petitioner seem to us to have been settled adversely to it by *Educational*

*Films Corp. of America* v. *Ward*, 282 U. S. 379, decided since the argument in the case at bar. In that case a tax law of New York laid upon every domestic corporation of certain classes, for the privilege of exercising its franchise, a tax upon so much of its entire net income derived from any source as was allocated to business carried on within the State. Embraced within net income as thus defined were royalties received from licensing copyrights granted by the United States upon motion picture films and owned by the corporation. It was contended by the corporation that this tax was invalid under the Federal Constitution because, (at page 386) "first, . . . the copyrights and all income derived from them are immune from state taxation since they, like patents, are instrumentalities of the federal government, taxation of which the Constitution impliedly forbids, see *Long* v. *Rockwood*, 277 U. S. 142; and, second, . . . the present tax, measured by net income, is void, so far as the measure includes income from the copyrights, because a tax on federal instrumentalities." Since the Supreme Court of the United States directed its attention to the second of these contentions, that decision may be presumed in the case at bar to proceed upon the assumption that royalties from copyrights stand upon the same footing as royalties from patents. The further contention of that corporation (as it is of the present petitioner) was that "the tax, although stated in the taxing act to be on corporate franchises, is in reality a tax on income, and as such falls within the class of taxes which concededly may not be directly imposed on federal instrumentalities." It was said in the opinion of the Supreme Court of the United States, after stating that, so far as concerned the power of a State to impose a tax on corporate franchises, "the problem has long since ceased to be novel," that (at pages 389, 390) "the privilege of exercising the corporate franchise is no less an appropriate object of taxation by one government merely because the corporate property or net income, which is made the measure of the tax, may chance to include the obligations of the other, or the income derived from them. The constitutional power of one government to

reach this permissible object of taxation may not be curtailed because of the indirect effect which the tax may have upon the other. The precise question now presented was definitely answered in *Flint* v. *Stone Tracy Co.* 220 U. S. 107, 162, *et seq.*, which upheld a federal tax, levied upon a corporate franchise granted by a state, but measured by the entire corporate income, including, in that case, income from tax exempt municipal bonds. In reaching this conclusion, the Court reaffirmed the distinction, repeatedly made in earlier decisions, between a tax, invalid because laid directly on governmental instrumentalities or income derived from them, and an excise which is valid because imposed on corporate franchises, even though the corporate property or income which is the measure of the tax embraces tax exempt securities or their income. See *Society for Savings* v. *Coite,* 6 Wall. 594; *Provident Institution* v. *Massachusetts,* 6 Wall. 611; *Hamilton Co.* v. *Massachusetts,* 6 Wall. 632; *Home Insurance Co.* v. *New York,*" 134 U. S. 594. After reviewing numerous decisions where excise taxes had been upheld "although the statutory measure of the tax included securities constitutionally immune from any form of direct taxation," the opinion proceeds as follows: (at pages 391–393) "It is said that there is no logical distinction between a tax laid on a proper object of taxation, measured by a subject matter which is immune, and a tax of like amount imposed directly on the latter; but it may be said with greater force that there is a logical and practical distinction between a tax laid directly upon all of any class of government instrumentalities, which the Constitution impliedly forbids, and a tax such as the present which can in no case have any incidence, unless the taxpayer enjoys a privilege which is a proper object of taxation, and which would not be open to question if its amount were arrived at by any other non-discriminatory method. This Court, in drawing the line which defines the limits of the powers and immunities of state and national governments, is not intent upon a mechanical application of the rule that government instrumentalities are immune from taxation, regardless of the consequences to the operations

of government. The necessity for marking those boundaries grows out of our Constitutional system, under which both the federal and the state governments exercise their authority over one people within the territorial limits of the same state. The purpose is the preservation to each government, within its own sphere, of the freedom to carry on those affairs committed to it by the Constitution, without undue interference by the other. . . . Having in mind the end sought, we cannot say that the rule applied by this Court for some seventy years, that a non-discriminatory tax upon corporate franchises is valid, notwithstanding the inclusion of tax exempt property or income in the measure of it, has failed of its purpose, or has worked so badly as to require a departure from it now; or that the present tax, viewed in the light of actualities, imposes any such real or direct burden on the federal government as to call for the application of a different rule. The decision of this Court in *Macallen Co.* v. *Massachusetts, supra* [279 U. S. 620], upon which appellant relies, was not such a departure. That case did not overrule *Flint* v. *Stone Tracy Co., supra.* Instead, the opinion rested the decision on the distinguishing fact that the tax exempt securities were included in the measure of the franchise tax by virtue of an amendment to the taxing statute which, it was held, was specifically intended to reach the income from tax exempt national and municipal bonds which had previously not been included in the measure of the tax. The case was thus brought within the purview of *Miller* v. *Milwaukee*, 272 U. S. 713, in which this Court had stated, with respect to a state tax on income, no franchise or privilege tax being involved . . . : 'If the avowed purpose or self-evident operation of a statute is to follow the bonds of the United States and to make up for its inability to reach them directly by indirectly achieving the same result, the statute must fail even if but for its purpose or special operation it would be perfectly good.' But, as the Court in that case was careful to point out, in language later quoted with approval in *Macallen Co.* v. *Massachusetts*, p. 631, 'A tax very

well may be upheld as against any casual effect it may have upon the bonds of the United States when passed with a different intent and not aimed at them . . . .' It cannot be said that the present tax was aimed at copyrights. Appellant insists that it is, for the same reason as the tax held invalid in *Macallen Co.* v. *Massachusetts, supra,* in that amendments of the taxing act, sufficiently broad to include income from tax immune property in the measure of the tax, were specifically intended to accomplish that result. . . . But the statute, before these amendments, was sufficiently broad to include income from copyrights within the measure of the tax; and neither before nor after the amendments did it make any mention of copyrights or their income."

This decision, in our opinion, is precisely applicable to the facts of the present record. The circumstance that royalties from copyrights were involved, rather than from patents, is immaterial because these two are joined in art. 1, § 8, of the Constitution of the United States, whereby "The congress shall have power . . . to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries."

The history of the system of excises upon corporations in this Commonwealth for the privilege of conducting business as a corporation, as shown by decisions of this court already cited, forbids the inference that there was any purpose on the part of the Legislature to single out royalties derived from patents as a subject for direct taxation. It appears to us impossible to infer that in enacting the statutes here assailed the Legislature had such uncanny prevision as to design by the use of language general in terms, having a wide field of unquestionable application, supported by numerous decisions of the Supreme Court of the United States, to select royalties derived from patents as a special basis for a corporate excise. The final sentences of the opinion in the *Educational Films Corporation* case, if the word "patents" be substituted for the word "copy-

rights," cover exactly the case at bar, namely: (at page 394) "There is nothing to suggest that the legislature could at any time have had in mind the addition of income from copyrights to the measure of the tax, or that the statute or the amendments were adopted 'for the very purpose of subjecting' it '*pro tanto* to the burden of the tax,' which was declared to be the vice of the statute in *Macallen Co.* v. *Massachusetts, supra,* p. 631. That the royalties play some part in the measure of the tax is the result of the application of the general language of the statute to particular circumstances to which the statute makes no specific reference. In this respect, the present statute differs in no substantial way from that upheld in *Flint* v. *Stone Tracy Co., supra.*"

The petitioner relies chiefly on *Macallen Co.* v. *Massachusetts,* 279 U. S. 620, overruling *Macallen Co.* v. *Commonwealth,* 264 Mass. 396. Of course we bow to that controlling authority and endeavor to follow and apply the principles there laid down. We do not understand that that decision strikes down as unconstitutional every statute whereby a general excise is laid upon corporations for the privilege of doing business, merely because in computing the excise income from tax exempt sources may be included. It was said in 279 U. S. 620, at page 628 that, in *Home Ins. Co.* v. *New York,* 134 U. S. 594, *Society for Savings* v. *Coite,* 6 Wall. 594, and *Provident Institution* v. *Massachusetts,* 6 Wall. 611, the distinction was pointed out "between an attempt to tax the property or income as such and to measure a legitimate tax upon the privileges involved in the use thereof. It is implicit in all that the thing taxed in form was in fact and reality the subject aimed at, and that any burden put upon the non-taxable subject by its use as a measure of value was fortuitous and incidental." We think that the thing aimed at by the statutes under which the excise was levied in the case at bar was the privilege of doing business as a corporation, and that any burden upon income received from royalties on patents was fortuitous and incidental to the measure of the lawful excise levied on that privilege. The distinction

between the *Macallen* case and the case at bar, and the inapplicability of the former to the latter, is demonstrated in the opinion in the *Educational Films Corporation* case.

*Petition dismissed.*