CORN *et al. v.* FORT, COMMISSIONER.

WEST KENTUCKY COAL CO. *v.* SAME.

(*Nashville,* December Term, 1935.)

Opinion filed June 13, 1936.

378

380

Cornelius, McKinney & Gilbert and Aust, McGugin & Spears, all of Nashville, for C. H. Corn and others.

W. C. Cherry and M. P. O'Connor, both of Nashville, for West Kentucky Coal Co.

Armstrong, McCadden, Allen, Braden & Goodman and Canale, Glankler, Loch & Little, all of Memphis, for interveners.

Roy H. Beeler, Attorney-General, and Nat Tipton and Edwin F. Hunt, Assistant Attorneys-General, for Commissioner Fort.

Mr. Justice DeHaven delivered the opinion of the Court.

(1) These suits involve the constitutionality of chapter 5, Pub. Acts 1935, Extraordinary Session of the General Assembly of the state of Tennessee, which is entitled:

"An Act to provide revenue for the State by the imposition of privilege taxes and to provide ways and means for the collection of such tax."

Section 2 of the act is as follows:

"That for the privilege of engaging in business in corporate form in this State which is expressly hereby declared to be a privilege, there is hereby levied upon all domestic corporations an annual privilege tax, the measure of which is hereinafter set forth. The tax imposed also applies to corporations whose business is being conducted by and through a receivership or trusteeship appointed by any court of competent jurisdiction.

"(b) For the privilege of engaging in business in this State in corporate form, there is hereby imposed upon foreign corporations doing an intrastate business an annual privilege tax to be measured as hereinafter mentioned.

"(c) For the privilege of engaging in business as a partnership, there is hereby levied on all partnerships conducting that type of activity in this State for which corporations may be formed under existing statutes in this State an annual privilege tax measured as hereinafter mentioned.

"(d) For the privilege of doing business in such form in this State, there is hereby levied against common law, business and/or Massachusetts trusts an annual privilege tax for the privilege of doing business in this State in such form."

It is further provided in the act that, "To do business in this State in any of the above mentioned forms is expressly declared to be a privilege," but that nothing in the act shall be applicable to national banks, corporations performing governmental functions of the United States, state of Tennessee, or any political subdivision thereof, or corporations chartered under the general welfare law of the state and not for profit, or to an individual, engaging as such, in any business or line of endeavor.

It is further provided that every corporation and partnership coming within the purview of the act is an "entity," and "shall pay as a privilege tax for the exercise of the privilege hereinabove defined a tax of $0.15 (fifteen cents) on the $100.00, or major fraction thereof, worth of capital invested by such entity in this State." Section 3.

Complainants, in the two above-styled causes, filed their respective bills in the chancery court of Davidson county, seeking a declaration under the provisions of the Declaratory Judgments Law of Tennessee as to their liability for any tax imposed by said act. Complainants, C. H. Corn *et al.*, alleged in their bill that they are partners in the operation of a grist mill, at Franklin, Tennessee, which business is conducted under the name of the Lillie Mill Company, and that a large part of the capital of the partnership is invested in wheat, corn, and other grains, the produce of the soil of Tennessee,

and in flour, meal, and feed which they have manufactured from such produce, and hold for sale. Complainant, West Kentucky Coal Company, alleges in its bill that it is a corporation organized under the laws of the state of New Jersey, and is engaged in the business of mining and selling coal, with mines in the state of Kentucky, and owning property and doing business in the state of Tennessee, where it is legally domesticated. Both complainants averred that chapter 5, Pub. Acts 1935, Extra Session, is unconstitutional and void as a violation of various provisions of the Constitutions of the state of Tennessee and of the United States, referred to in the bill.

The defendant demurred to the bills, relying on the validity of the act, and also upon the provision contained therein that each section, subsection, and paragraph thereto are severable, and that should any portion of the act be held unconstitutional the same shall not affect the remainder of the act.

The chancellor held the act in question constitutional and valid as applying to corporations, and unconstitutional and invalid as applying to partnerships, being of the opinion that the part of the act applying to partnerships may be elided, leaving a valid franchise tax act as to corporations. To the action of the chancellor in holding the statute unconstitutional insofar as it imposes a tax on partnerships, the defendant excepted, prayed, and was granted an appeal to this court. The complainants also excepted and have filed certain assignments of error. To the action of the chancellor in holding the act constitutional as to corporations, the complainant, West Kentucky Coal Company, excepted, prayed, and was granted an appeal to this court.

■ (2) Article 2, section 28, of the Constitution of the state of Tennessee, provides, in part, as follows: "But the Legislature shall have power to tax Merchants, Peddlers and privileges, in such manner as they may from time to time direct." A privilege is whatever business, pursuit, occupation, or vocation, affecting the public, the Legislature chooses to declare and tax as such. *Mabry* v. *Tarver,* 20 Tenn. (1 Humph.), 94; *Jenkins* v. *Ewin,* 55 Tenn. (8 Heisk.), 456, 475; *Burke* v. *Memphis,* 94 Tenn., 692, 30 S. W., 742; *Seven Springs Water Co.* v. *Kennedy,* 156 Tenn., 1, 299 S. W., 792, 56 A. L. R., 496; *Allen* v. *Pullman's Palace Car Co.,* 191 U. S., 171, 178, 24 S. Ct., 39, 48 L. Ed., 134, 138. The term "privilege," as used in article 2, section 28 of the Constitution, refers to the activity or occupation and not to the character of the person or entity that pursues the activity or occupation. *Bank of Commerce & Trust Co.* v. *Senter,* 149 Tenn., 569, 582, 260 S. W., 144. The tax is upon the privilege itself. *Mayes* v. *Erwin,* 27 Tenn. (8 Humph.), 290, 293, and not upon the form in which the business is conducted.

The tax imposed by chapter 5, Pub. Acts 1935, Extra Session, is upon the privilege of doing business in this state as a corporation, trust, or partnership. The application of the tax is made to depend on the character of the entity engaged in business, and not on the character of the business pursued.

■ This court, in *Bank of Commerce & Trust Co.* v. *Senter,* 149 Tenn., 569, 260 S. W., 144, has expressly determined that the right to do business in Tennessee in corporate form is a taxable privilege. This conclusion follows from the nature of a corporation and the manner of its creation. No corporation can exist without the

consent or grant of the sovereign. Since a corporation can exist only subject to the will of the sovereign, its right to exist or to do business in corporate form is subject to such terms and restrictions as the state may place upon the right, including the payment of such taxes as the sovereign may exact for the privilege of existing or of doing business. The right of a corporation to engage in intrastate business, within a state, depends solely upon the will of the state. The state, having the power to exclude entirely, has the power to impose as a condition the payment of a license fee. *Camden Fire Ins. Assn.* v. *Haston,* 153 Tenn., 675, 284 S. W., 905; *Maine* v. *Grand Trunk R. Co.,* 142 U. S., 217, 12 S. Ct., 121, 163, 35 L. Ed., 994; *Ashley* v. *Ryan,* 153 U. S., 436, 14 S. Ct., 865, 38 L. Ed., 773.

The act here in question undertakes to impose a tax on partnerships engaged in that type of business for which corporations may be formed, for the privilege of doing business in that form, but excludes from its operation individuals, engaged as such, in any business or line of endeavor.

The elements and considerations sufficient to support the validity of a franchise tax on corporations for the privilege of doing business in that form within a state are wholly absent in the case of an individual, or simple and unlimited partnerships. They hold no franchise or special privilege conferred by the sovereign not belonging to citizens generally of common right. The right of individuals to combine their activities, as partners, is independent and antecedent to government.

██ The power of taxation is not conferred upon the Legislature by the Constitution; it passes under the general designation of "legislative power or authority."

There is no limitation upon the Legislature as to the amounts or objects of taxation, except that found in the restrictions and prohibitions of the Constitution. *Jenkins* v. *Ewin,* 55 Tenn. (8 Heisk.), 456, 475; *City of Chattanooga* v. *Nashville, C. & St. L. Railroad Co.,* 75 Tenn. (7 Lea), 561, 566. While the Legislature has a wide range of discretion in the matter of imposing privilege taxes, it cannot arbitrarily exclude one set of individuals from the operation of a privilege tax and include another set. The act here in question excludes from its operation individuals, engaging as such, in any business, but includes two or more individuals who have agreed to join their efforts, as partners, in a common enterprise. There exists some reason for imposing the tax on corporations, as hereinbefore shown, but we can see no substantial reason for imposing this tax on a simple partnership, composed of individuals, and exempting the single individuals, who may, perhaps, be engaged in the same kind of business as the partnership. The classification is arbitrary and capricious, and in violation of article 1, section 8, of the Constitution of Tennessee, and of the equal protection clause of the federal Amendment to the Federal Constitution (Amend. 14, sec. 1).

Our conclusion is that chapter 5, Pub. Acts 1935, Extra Session, is unconstitutional and void insofar as it undertakes to place a tax on partnerships for doing business in that form.

(3) The chancellor elided from the act the provision with respect to the imposition of a privilege tax upon partnerships, having held such provision invalid. The West Kentucky Coal Company complains of this action of the chancellor. The act provides:

"That the Legislature expressly declares that each section, subsection and paragraph of this Act are severable and that should any portion of this Act be held unconstitutional the same shall not affect the remainder of said Act, but such unconstitutional portion shall be elided and the Legislature declares they would have enacted this Act with such unconstitutional portions elided therefrom." Section 8½.

The act classifies four entities and makes them subject to a tax for the privilege of doing business in this state. Any one of the entities so classified could have been omitted without impairing the validity of the act as to those included. There can be no speculation as to whether or not the Legislature would have passed the act without the unconstitutional portion, for it has specifically declared that it would have enacted the statute with such portion elided. The inclusion of partnerships in the classification is clearly severable, and the fact that such inclusion was invalid cannot affect the validity of the balance of the act. *State* v. *Scott*, 98 Tenn., 254, 39 S. W., 1, 36 L. R. A., 461; *State ex rel.* v. *Cummins*, 99 Tenn., 667, 42 S. W., 880; *Fite* v. *State*, 114 Tenn., 646, 88 S. W., 941, 1 L. R. A. (N. S.), 520, 4 Ann. Cas., 1108; *H. G. Hill Co.* v. *Whitice*, 149 Tenn., 168, 258 S. W., 407; *Williams* v. *Standard Oil Co.*, 278 U. S., 235, 49 S. Ct., 115, 73 L. Ed., 287, 60 A. L. R., 596.

■ (4) The tax imposed by chapter 5, Pub. Acts 1935, Extra Session, is not a property tax. It is a privilege tax measured by the worth of capital invested by the entity in this state. The language of the act makes this plain. In section 2 of the act, referring to the tax, it is stated, "the measure of which is hereinafter set forth," and "an annual privilege tax to be measured as

hereinafter mentioned.'' The measure set forth is 15 cents on the $100, or major portion thereof, of the worth of capital invested in this state. The fact that the tax is measured by the worth of invested capital does not make it a property tax. A privilege tax imposed upon corporations for the right to engage in business does not become a property tax because it is proportional in amount to the worth or value of the capital invested in this State.

In *Southern R. Co.* v. *Watts,* 260 U. S., 519, 530, 43 S. Ct., 192, 197, 67 L. Ed., 375, 389, there was involved the constitutionality of a railroad franchise tax which was based upon the value of property as ascertained for the purpose of *ad valorem* taxation. The court said:

''It is argued that this franchise tax is an additional property tax which is not imposed on others, and that, consequently, it violates the uniformity clause of the state Constitution and the equal protection clause of the federal Constitution. It is true that the franchise tax is measured by the value of property already subjected to the *ad valorem* tax. But a privilege tax is not converted into a property tax because it is measured by the value of property (compare *Clark* v. *Titusville,* 184 U. S., 329, 333, 334, 22 S. Ct., 382, 46 L. Ed., 569 [573]); nor by the fact that in this measure is included property not used in the transportation service.''

In Cooley on Taxation (4 Ed.), sec. 838, the rule is thus stated:

''If a tax is in its nature an excise, it does not become a property tax because it is proportioned in amount to the value of the property or capital stock of the corporation. *A fortiori,* a tax which takes no notice of the

real value of the assets of the corporation is generally held to be an excise rather than a property tax.''

In *State of Maine* v. *Maine Central R. Co.*, 74 Me., 376, the court said:

''Now it is perfectly well settled that the amount of a franchise tax upon a corporation may be graduated or measured by an appraisal of the whole, or any portion, of the corporate property, without thereby making it a property tax. Most franchise taxes are so measured. Possessing the power to impose a franchise tax to any amount it deems proper, the legislature may measure the amount by any standard it pleases.''

The Legislature was within its constitutional rights in measuring the amount of the tax by a percentage on the worth of capital invested by the entity in Tennessee. In *Home Insurance Co.* v. *New York*, 134 U. S., 594, 10 S. Ct., 593, 595, 33 L. Ed., 1025, the court said: ''No constitutional objection lies in the way of a legislative body prescribing any mode of measurement to determine the amount it will charge for the privileges it bestows.'' The court was dealing with a tax imposed on corporations for the privilege of doing business in the state of New York. In *State* v. *Franklin County Savings Bank & Trust Co.*, 74 Vt., 246, 52 A., 1069, 1070, the court said: ''The amount to be paid on franchises of any class may be ascertained upon such basis as the legislature shall determine.'' In *State* v. *Pierce Petroleum Corporation*, 318 Mo., 1020, 2 S. W. (2d), 790, 794, the court said: ''The tax is not a property tax, but an excise levied upon the privilege of transacting business in this state as a corporation. . . . It may therefore be computed according to any method the Legislature sees fit to adopt.'' Other cases of like effect could be

cited, but it is needless to multiply authority on this point.

In *Foster & Creighton Co.* v. *Graham,* 154 Tenn., 412, 285 S. W., 570, 47 A. L. R., 971, relied on here by complainants, the court was considering the contention that a tax upon the storage of gasoline measured by the number of gallons of gasoline withdrawn from storage was a property rather than an excise tax. The court was not considering a tax of the nature here imposed.

■ (5) The fact that the tax imposed on a corporation for the privilege of doing intrastate business in this state is measured by the capital invested, thereby including capital invested in property exempt from *ad valorem* tax, does not render the tax invalid. *National Life & Accident Ins. Co.* v. *Dempster,* 168 Tenn., 446, 79 S. W. (2d), 564; *Pacific Co.* v. *Johnson,* 285 U. S., 480, 52 S. Ct., 424, 76 L. Ed., 893; *Thomson Electric Welding Co.* v. *Commonwealth,* 275 Mass., 426, 176 N. E., 203; Cooley on Taxation (4 Ed.), 861; *Flint* v. *Stone Tracy Co.,* 220 U. S., 107, 31 S. Ct., 342, 55 L. Ed., 389, Ann. Cas., 1912B, 1312; *Home Ins. Co.* v. *New York,* 134 U. S., 594, 10 S. Ct., 593, 33 L. Ed., 1025. The reason for the rule is that such tax is not a tax upon the exempt property, but is a privilege tax in the measure of which tax exempt property can be included.

■ (6) It is insisted by the West Kentucky Coal Company that it cannot be subjected to the tax imposed by chapter 5, Pub. Acts 1935, Extra Session, because it pays an excise tax and also a privilege tax under the General Revenue Act as a coal dealer (Code 1932, sec. 1690 et seq.). The argument is made that this is double taxation. The privilege tax placed upon coal dealers is applicable to all who engage in that business. The

excise tax is for the privilege of doing intrastate business in this state. No double taxation arises by virtue of the two taxes. Complainant's real contention, however, is that the imposition of the excise tax (Code, sec. 1316 et seq.) and the tax imposed under the act here in question amounts to double taxation. The excise tax is measured by 3 per cent of net earnings, whereas the tax here in question is measured by a percentage of worth of capital invested. The Legislature, in the same act, might have made the measure of the tax a percentage of both net earnings and capital invested. *Thomson Electric Welding Co.* v. *Commonwealth,* 275 Mass., 426, 176 N. E., 203; *Judson Freight Forwarding Co.* v. *Commonwealth,* 242 Mass., 47, 136 N. E., 375, 27 A. L. R., 1131.

Under chapter 5, Pub. Acts 1935, Extra Session, the amount paid under the excise statute is expressly made a credit upon the amount of the tax ascertained by a percentage of capital invested. The net result of the whole thing is that no corporation will be required to pay more than the tax levied under chapter 5, Pub. Acts 1935, Extra Session, excepting only those corporations whose tax would be less than 3 per cent of net earnings. The contention that complainant is subject to double taxation cannot be sustained.

(7) It is contended by complainants that under chapter 5, Pub. Acts 1935, Extra Session, legislative power has been delegated to the commissioner and the chancery court in ascertaining the amount of the tax. The act provides, in substance, that if the commissioner be of the opinion that the assessed valuation fixed upon the property for *ad valorem* taxation be fair and adequate, he may adopt and use such valuation; but, if he

deems such value inadequate and representing less than the actual value thereof, he may, after giving 10 days' notice to the entity whose property is sought to be taxed, proceed to appraise the same himself, or through competent appraisers, and determine the value thereof. After determining what in his opinion constitutes a fair value for such property, he shall file a detailed statement in his office setting forth the valuation fixed and within 3 days send to the owner, by registered mail, a statement showing in detail the amount of his valuation. If the entity is dissatisfied with the fixing of such valuation, it is given the right to review the findings by *certiorari* and *supersedeas* to the chancery court in the county in which the controversy arises, application therefor to be made within 30 days following the mailing of the registered statement. Upon the hearing in the chancery court, the value fixed by the commissioner shall be deemed *prima facie* correct, but such presumption is made rebuttable. Either party may introduce evidence as to the value of the property, and the court upon consideration of the entire record shall by its judgment fix the fair value of the property. Either party may appeal to the Supreme Court. As a condition precedent to *certiorari* and *supersedeas,* the entity seeking the same shall agree to pay at time due the tax upon the basis of the assessment of the property for *ad valorem* purposes, and give bond to pay whatever tax shall ultimately become due upon the valuation fixed by final judgment.

Section 4 of the act is, in part, as follows:

''That in the case of entities having property located both in this State and elsewhere, the Commissioner is hereby authorized and empowered to adopt such method as he may deem adequate and equitable both to the State

and to the taxpayer in determining the amount of capital as hereinabove defined properly allocable to this State and employed by the entity in this State. In determining the amount of such capital employed by the entity in question in this State, the Commissioner shall take into consideration the extent of the tangible property of such entity in this State as compared to the extent of the entire property of the entity wherever located; the gross receipts of the entire entity; the value of goods, wares and merchandise manufactured or maintained here as compared to the gross value of goods manufactured or maintained by such entity everywhere.''

In the case of all entities, the commissioner is required to take into consideration the book value of Tennessee property as compared to the total value of all of its property as shown by its books.

The act (section 4) contains the following provision with reference to allocation:

''The Legislature hereby declares that no adequate set formula can be adopted for the determination of that proportion of the capital employed in Tennessee in case of entities having property both within and without this State which said formula would be equitable to all entities under all circumstances and for that reason has not undertaken to adopt such set formula believing that the judicial right of review of the Commissioner's allocation mentioned will prove more equitable as a whole than any set formula which it might adopt, but it expressly declares that it is made the duty of the Commissioner to take into consideration in making his allocations any and all of the above mentioned comparisons and/or ratios which will be appropriate in the determination with respect to the entity under considera-

tion of the amount of capital employed by it in this State, and all other relevant facts."

It is further provided:

"In case the Chancery Court, . . . or any appellate court having jurisdiction of a review under this section shall be of the opinion that the Commissioner adopted an erroneous or inequitable method for the allocation of such tax, it shall be the duty of such court, in its decision, to lay down and promulgate the principles and factors upon which in its judgment an equitable allocation may be made. Either party may appeal."

There is no uncertainty whatever in the act as to the yardstick of the tax, the thing by which the amount of tax is measured. That yardstick is the named percentage on capital invested, or, as repeatedly stated in the act, "capital employed," in the business. The administration of the law is, of course, left to a named official of the state. The law is not self-executing. Necessarily somebody has to ascertain the amount of invested capital. Certain elements to be considered in arriving at that value are stated in the act. If the *ad valorem* assessment be considered fair, then the commissioner accepts that; if not, he proceeds to ascertain the value of the property. If the entity be dissatisfied with his findings, it may appeal. The whole object of the provisions of the act with reference to ascertainment of the value of the property is to arrive at a just assessment. The appeal is optional with the entity. The action of the court must be invoked by the entity. If the provisions governing the hearing and action of the court be considered by the entity objectionable, or invalid, then it would not, of course, invoke the jurisdiction of the court. The provisions for appeal are entirely for the benefit

of the entity. If it invoked the right of appeal given by the act, it could not be heard to say that the provisions with respect to appeal are invalid. The very object of the appeal would be, of course, to obtain a more equitable ascertainment of the value of its property.

We can see no illegal delegation of authority to the commissioner. Certain definite formula is set out in the act for his guidance. He can look to other things in ascertaining the value of the property, as a particular case might demand. Had this right been withheld from him, injustice could arise. The annotator who prepared the note to *Hans Rees' Sons* v. *North Carolina,* 283 U. S., 123, 51 S. Ct., 385, 75 L. Ed., 879, says, in part:

"In the second place, it seems undesirable, in this present formative stage, for state legislatures to adopt mandatory apportionment formula applicable to all cases; rather, a considerable discretion should be vested in the taxing authorities, not only in the acquisition of information, but also in the apportionment of income."

(8) It is next insisted that the act is unconstitutional in that a tax is never less than a sum measured by the *ad valorem* assessment, but may be more. The specific objection is that the taxpayer cannot dispute its *ad valorem* assessment, but that the state is not so limited. The contention, it seems, overlooks the fact that the statutes providing for *ad valorem* assessments also provide an adequate remedy for any taxpayer who feels aggrieved by the assessment. Having this opportunity for review, the taxpayer cannot be heard to demand another. We see no merit in this contention.

(9) Complainants challenge the act in question as a burden upon interstate commerce because, as they insist, the act makes as one of the essential elements

in ascertaining the value of the property invested in this state by the entity the gross receipts of the entire entity. The act plainly means, we think, that the commissioner is to take into consideration in fixing such value the extent of the tangible property of such entity in this state as compared to the extent of the entire property of the entity, the extent of the gross receipts in this state as compared to the gross receipts of the entire entity, and the value of goods manufactured or maintained here as compared to the gross value of goods manufactured or maintained by the entire entity. The words "gross receipts of the entire entity," appearing in the act, must be construed with its context and the intent of the act, and when so construed it becomes apparent that the commissioner is to compare the gross receipts in this state with the gross receipts of the entire entity. When the intent of a statute is clear, general words will be restrained to that intent, and words of narrower import will be expanded to embrace and effectuate that intent. *Gold* v. *Fite,* 61 Tenn. (2 Baxt.), 237; *Brown* v. *Hamlett,* 76 Tenn. (8 Lea), 732. Words may be modified, altered, or supplied so as to obviate repugnancy to or inconsistency with such intent. *Coal Creek, etc., Co.* v. *Tennessee Coal, etc., Co.,* 106 Tenn., 651, 62 S. W., 162; *Rose* v. *Wortham,* 95 Tenn., 505, 32 S. W., 458, 30 L. R. A., 609. The court is to take into consideration the "words, the context, the effects, and consequences." *Russell* v. *Colyar,* 51 Tenn. (4 Heisk.), 154; *State* v. *Clarksville & Russellville Turnpike Co.,* 34 Tenn. (2 Sneed), 88, 89. The literal interpretation of a statute is finding out the true sense by making the statute its own expositor. *State* v. *Manson,* 105 Tenn., 232, 58 S. W., 319. The intent of the act is to impose

a privilege tax on an entity, engaged in intrastate business, to be measured by a percentage on the worth of the capital invested, or employed by it in this state. No tax is imposed by the act on gross receipts of the entire entity. No such intent or purpose can be found in the act. However, the Legislature did intend that, in the ascertainment of such value, the proportion of gross receipts in this state should be compared with the gross receipts of the entire entity. To take the words "gross receipts on the entire entity" and consider them separately from their context; and treating them as requiring the commissioner to apply the percentage fixed for the tax to the whole of the gross receipts of the entity, would be utterly inconsistent with the clear purpose and intent of the act, and repugnant thereto.

However, if the words just quoted, when dissociated from their context, could be held to require the commissioner to apply the measure of the tax to the whole of the gross profits of the entity, then it would be true that such requirement would be invalid, because a burden on interstate commerce. In such case, the court, under the mandate of the Legislature, would elide such requirement; it being severable.

A statute, such as the one here, which imposes a privilege tax upon corporations having property located both in this state and elsewhere, and doing business in this state, does not impose an unconstitutional burden upon interstate commerce because in the ascertainment of the value of its capital employed in this state the assessing officer is to consider, among other factors, the ratio of its gross receipts everywhere as compared to its gross receipts in the state. *United States Glue Co.* v. *Oak Creek,* 247 U. S., 321, 38 S. Ct., 499, 62 L. Ed., 1135,

Ann. Cas., 1918E, 748; *Maine* v. *Grand Trunk R. Co.*, 142 U. S., 217, 12 S. Ct., 121, 163, 35 L. Ed., 994; Cooley on Taxation (4 Ed.), secs. 395, 396. We think the objection made is without merit.

(10) Complainants seek to raise the question in this court, for the first time, whether or not chapter 5, Pub. Acts 1935, Extra Session, is constitutional legislation, in view of the proclamation of the Governor calling such extra session. The defendant objects to the consideration of this question because not made in any pleading, or passed on in the court below, or presented in any assignment of error in this court. When a bill is bottomed on the unconstitutionality of a statute it is the duty of complainant to point out and state with particularity details of supposed invalidity. *Ogilvie* v. *Hailey*, 141 Tenn., 392, 210 S. W., 645. In *Williams* v. *Realty Dev. Co.*, 161 Tenn., 451, 33 S. W. (2d), 64, 65, the court said: "We are of the opinion that such a question cannot be made against the statute for the first time on appeal; certainly not in a case at law, wherein the appeal is in the nature of a writ of error and the hearing in the appellate court is not *de novo*." In a matter of equity tried according to the forms of the chancery court, either party may appeal to the supreme or appeals court, "and have a re-examination, in that court, of the whole matter of law and fact appearing in the record." Code, sec. 9036. The Governor's proclamation convening the General Assembly in extraordinary session on July 15, 1935, can be judicially noticed, though not appearing in the record in the cause. Section 2 of the Governor's proclamation reads:

"To provide sufficient revenue to pay the expenses of the State government and maintain its institutions, de-

partments, offices and agencies for the biennium beginning July 1, 1935.'' Pub. and Priv. Acts 1935, Ex. Sess., p. 15.

The contention made is that chapter 5, Pub. Acts 1935, Extra Session, undertook ''to provide revenue for the State'' for an indefinite period of time, and that the act, therefore, was beyond the power of the Legislature as restricted by article 3, section 9, of the State Constitution, which reads:

''He may, on extraordinary occasions, convene the General Assembly by proclamation, in which he shall state specifically the purposes for which they are to convene; but they shall enter on no legislative business except that for which they were specifically called together.''

The act in question is an act to provide revenue to pay the expenses of the state government for the present biennium. The statute does not provide that it shall die by limitation at the end of the biennium. No provision of the act undertakes to extend its operation beyond the present biennium. Every presumption is, of course, in favor of the validity of the act. It must be presumed that the Legislature was undertaking by the act to provide revenue for the period mentioned in the proclamation of the Governor. The duty of providing revenue for succeeding bienniums will fall upon subsequent Legislatures. The question here made could not properly arise until after the expiration of the present biennium, if it was sought to enforce the tax after that time. We find no merit in the contention made.

After a full examination of the various questions made in the cause, we are constrained to hold that chapter 5, Pub. Acts 1935, Extra Session, is constitutional and valid as to corporations, and unconstitutional and

invalid as to partnerships. The decree of the chancellor is affirmed. Complainants will pay the costs of the appeal.

### On Petition to Rehear.

Complainants in their petition to rehear call the attention of the court to chapter 40, Public Acts 1935, First Extraordinary Session of the General Assembly, and insist that the provisions of this act, with respect to the appropriation of $25,000 for the use and benefit of the department of finance and taxation in the organization and collection of the franchise tax, must be taken as showing an intent on the part of the Legislature to enact said chapter 5 for at least five years.

There is no language whatever in said chapter 5 extending its operation beyond the biennium. This being true, the court cannot read into the statute a provision extending its operation for any period of time. Because the Legislature, subsequent to the enactment of chapter 5, passed another act making an appropriation for the administration of chapter 5, and for its repayment within five years, would not authorize the court to read into chapter 5 a legislative intent, not based on any language used in Chapter 5, that it should be in force and effect for five years.

It was contended on the hearing of the case that chapter 5 was unconstitutional because it extended in its operation beyond the biennium. The court said in its opinion: "The question here made could not properly arise until after the expiration of the present biennium, if it was sought to enforce the tax after that time."

This would be true had chapter 5 contained a provision expressly extending its operation beyond the biennium;

*a fortiori,* it would be true if an intent, gathered from a subsequently enacted statute, could be said to so extend it.

Our judgment is that the petition for rehearing must be overruled.