LIFE & CASUALTY INS. CO. v. STOKES, COM'R.*

*(Nashville,* December Term, 1937.)

Opinion filed March 5, 1938.

*See companion case, Nat. Life & Acc. Ins. Co. v. Fort; p. 645, **infra.**

P. M. Estes, P. M. Estes, Jr., and Sydney F. Keeble, all of Nashville, for appellant.

Roy H. Beeler, Attorney-General and Edwin F. Hunt, Assistant Attorney-General, for appellee.

Mr. Justice Cook delivered the opinion of the Court.

This appeal involves the construction of chapter 5, Acts of the Extra Session of 1935. The act was held valid in so far as it applies to corporations in the case of *Corn v. Fort, Commissioner*, 170 Tenn., 377, 95 S. W. (2d), 620, 106 A. L. R., 647. By sections 2 and 3 of the act a tax of 15 cents on the $100 of capital invested in this state and defined to include as capital, surplus and undivided profits, was levied upon corporations for the privilege of doing business in the state. It was provided by section 3 that "the capital invested by any such entity in this State upon which the foregoing shall be paid shall in no instance be less than the actual cash value of the real and tangible personal property owned and/or used by such entity within this State." The complain-

ant insists that the measure of the tax as applied to insurance companies is not governed by the quoted provision of section 3, but by section 4, which provides:

"That in the case of entities having property located both in this State and elsewhere, the Commissioner is hereby authorized and empowered to adopt such method as he may deem adequate and equitable both to the State and to the taxpayer in determining the amount of capital as hereinabove defined properly allocable to this State and employed by the entity in this State. In determining the amount of such capital employed by the entity in question in this State, the Commissioner shall take into consideration the extent of the tangible property of such entity in this State as compared to the extent of the entire property of the entity wherever located; the gross receipts of the entire entity; the value of goods, wares and merchandise manufactured or maintained here as compared to the gross value of goods manufactured or maintained by such entity everywhere and in consideration of common carriers, these additional factors; the mileage operations of such common carriers in this State as compared to their total mileage operations, the amount of localized property whose use is common to this State and that of other States; the amount of equipment and the value thereof customarily used by such common carriers in this State as compared to the amount in value of such equipment used in all its operations by such common carriers; and in case of insurance companies, he shall take into consideration the amount of gross premium receipts from business done within this State as compared to the total gross premium receipts from business done elsewhere; and the amount of investments held by such

companies in this State as compared to the total investment of said companies. In determining the amount of investments of insurance companies in this State the Commissioner shall consider as investments in this State the following:

"(1) All real and tangible personal property owned by said entity in this State or held for their benefit herein; (2) all notes secured by lien upon property in this State, all other notes payable from residents of this State and all accounts receivable from residents of this State or arising from business done within this State; (3) all securities owned by said companies which are obligations of this State or any political subdivision. In computing the invested capital of mutual insurance companies, the Commissioner shall ascertain the proportion of capital stock, surplus and undivided profits of not less than ten nor more than twenty-five stock companies which write the same type of insurance as the mutual company under consideration, to the invested reserve of such stock companies and shall ascertain the average ratio of such capital stock, surplus and undivided profits to the invested reserve and shall ascertain the total capital of such mutual insurance companies by multiplying the amount of their invested reserve by the percentage or ratio so obtained, and the amount thus produced shall be treated as the total capital of such mutual insurance company.

"Likewise, in the case of all entities the Commissioner shall take into consideration in making his allocation herein the value at which the entity values upon its books and records its property in this State as compared to the total value of all of its property as shown by such books and records."

By reference to gross premium receipts and total investments as compared with premium receipts and investments in this state, the complainant, by computation, found the ratio of 25.83 per cent. allocable to Tennessee, and, applying that percentage to $1,843,826, the amount of its capital, surplus and undivided profits, it fixed the tax base at $476,299. The rate applied to that base resulted in a tax of $714.45, which the complainant offered to pay. The Commissioner of Finance and Taxation refused to adopt the method of computation used by complainant. He insisted that because the complainant's report for taxation as of December 31, 1935, disclosed the actual cash value of its real and tangible personal property owned and used in the state to be $1,137,060, that the tax should be $991 and accordingly made the assessment and applied the rate. The complainant paid the difference of $276.75 under protest and sued to recover. The chancellor sustained defendant's demurrer to the bill and complainant appealed.

It is not contended that the assessment by the commissioner exceeds the actual cash value of the real and personal property owned and used by complainant in this state, but it is insisted that the measure of the tax upon insurance companies is governed by the formula prescribed by section 4, without reference to the provision in section 3 that the minimum assessment shall not be less than the actual cash value of the company's investments within the state.

When the provisions of the act are considered altogether, it appears that the Legislature intended to levy the prescribed rate against the actual cash value of the visible corporate capital within the state, to be ascertained by reference to the assessment books or from the

company's report for taxation, or by independent inquiry; and that the tax rate should be applied to the actual cash value of the real and tangible property so found within the state.

In case of corporations with little or no stationary capital investment, but with large capital flowing into and actually used in an extensive state and interstate commerce business, the commissioner was authorized by section 4 of the act to adopt methods adequate and equitable to both parties in order to determine the capital used in the state as distinguished from the capital used beyond the state and make a proper allocation. The formula and the provisions of section 4 are not exclusive but auxiliary. They were merely intended to aid in finding an equitable tax base where it could not be found by reference to evidences of actual value of the corporate investment owned and used in the state. So section 4 cannot be applied to reduce the definite tax base fixed by section 3.

It is further insisted by complainant that the $1,-137,060 found by the commissioner to be the value of complainant's capital invested and used in the state includes reserves that belong to policyholders, and which is a debt and not an asset of the company. It does not appear from the record that the alleged reserve is segregated from other assets, or that it is separately invested either here or elsewhere.

We find no error in the decree of the chancellor.