# ASHLEY v. RYAN.

ERROR TO THE SUPREME COURT OF THE STATE OF OHIO.

No. 888. Argued and submitted April 26, 1894. — Decided May 14, 1894.

If several railroad corporations, each existing under the laws of separate States, consolidate into one corporation, a statute of one of the States, imposing a charge upon the new consolidated company of a percentage on its entire authorized stock as the fee to the State for the filing of the articles of consolidation in the office of the Secretary of State of the State, without which filing it could not possess the powers, immunities, and privileges which appertain to a corporation in that State, is not a tax on interstate commerce, or the right to carry on the same, or the instruments thereof; and its enforcement involves no attempt on the part of the State to extend its taxing power beyond its territorial limits.

A State, in permitting a foreign corporation to become one of the constituent elements of a consolidated corporation, organized under its laws, may impose such conditions as it deems proper, and the acceptance of the franchise implies a submission to the conditions without which the franchise could not have been obtained.

THE Wabash, St. Louis and Pacific Railroad Company, which owned and operated lines running through the States of Ohio, Indiana, Illinois, Missouri, and Michigan, having defaulted in the payment of interest on its bonds, foreclosure proceedings were commenced in the Federal courts for the sale of its property. Subsequently a committee was entrusted with the duty of buying in the property. After purchase by the committee the property in the several States was transferred to companies incorporated in those States. The following were the companies thus organized, and to whom the necessary transfers were respectively made:

In Ohio: The Toledo and Western; capital stock, $700,000.

In Michigan: The Detroit and State Line Wabash; capital stock, $300,000.

In Indiana: The Wabash Eastern, of Indiana; capital stock, $9,000,000.

In Illinois: The Wabash Eastern, of Illinois; capital stock, $12,000,000.

In Missouri: The Wabash Western; capital stock, $30,000,000.

Thereafter these several companies were consolidated into one. Section 148*a* of the Revised Statutes of Ohio contains, among other provisions, the following :

"The Secretary of State shall hereafter charge and collect the following fees for official services :

"1. For filing the articles of incorporation of any corporation whose capital stock is ten thousand dollars or under, ten dollars ; of a corporation whose capital stock is over ten thousand dollars, one-tenth of one per cent upon the authorized capital stock of such corporation.

"2. For filing a certificate of increase of the capital stock of any corporation having a capital stock where the amount of the increase is ten thousand dollars or under, ten dollars; where the amount of increase is over ten thousand dollars, one-tenth of one per cent upon the proposed amount of increased capital.

"3. For filing articles of agreements of consolidation of corporations having a capital stock, the following fees shall be collected by the Secretary of State: Said articles or agreements of consolidation shall be treated as the articles of incorporation of the new consolidated corporations created by such articles or agreements of consolidation, and the fees for filing such articles or agreements of consolidation shall be the same in each case as is hereinbefore set forth for the filing of articles of incorporation of a corporation having the same amount of capital stock, as is provided for by the articles or agreements of consolidation for the new consolidated corporation, created by any such articles or agreement of consolidation ; and in fixing the amount of such fees, no credit shall be allowed for fees previously paid by any of the constituent corporations, parties to such consolidation, but the same shall be determined solely by the amount of capital stock of the new corporation created by such articles or agreements of consolidation."

By another provision of the Revised Statutes of Ohio, the

fees to be collected under the foregoing law were required to be paid by the Secretary of State into the Treasury.

The plaintiffs in error presented their articles of consolidation, for filing, to the Secretary of State, and tendered $700, that being one-tenth of one per cent on the capital stock of the Toledo and Western Railroad, the only Ohio corporation which had entered into the consolidation. The secretary refused to file the proffered articles for that amount, and demanded $52,000, or one-tenth of one per cent of the par value of the entire stock of the consolidated corporation. This amount was paid under protest, and suit was at once brought to recover all the excess paid over and above the $700 originally tendered, upon the ground that such excess had been collected without warrant of law; that it constituted a tax for the general purposes of revenue, and, therefore, its exaction was contrary to the constitution and laws of the State of Ohio; and, moreover, that its enforcement would violate the Constitution of the United States, because it would be an attempt on the part of the State of Ohio to lay a burden on interstate commerce, or the instruments of such commerce, and to give an extra-territorial force to its taxing power.

Pending the controversy, an injunction issued restraining the Secretary of State from covering into the state Treasury the sum which had been paid him under protest. The cause was ultimately taken to the Supreme Court of the State of Ohio, and by that court the judgment which maintained the validity of the charge was affirmed. The plaintiffs in error thereupon brought the cause here for review.

*Mr. Henry Crawford* for plaintiffs in error submitted on his brief.

I. No technical objections prevent recovery.

II. The law under which the charge was exacted is not a police regulation, but an attempted exercise of the taxing power of the State, and its construction and validity must be adjudged exclusively on that theory.

III. This court should limit the scope of the law and con-

strue it not to authorize the imposition of a unit franchise or organization tax, rated upon the aggregate capital stocks of combined domestic and foreign corporations.

When local courts interpret state laws so as to injuriously affect interests lying outside its boundaries, the courts of the United States are not compelled to accept such construction, but are at liberty to fix their own interpretation on the statute. *Pennoyer* v. *Neff*, 95 U. S. 714; *Pana* v. *Bowler*, 107 U. S. 529; *Gormley* v. *Clark*, 134 U. S. 338; *Wilson* v. *Seligman*, 144 U. S. 41.

In considering the true meaning of a Virginia statute taxing railways, this court held: "The terms of the act, indeed, include every railroad and canal company not exempt from taxation by virtue of its charter, but that language, according to a general rule of interpretation, must be confined to corporations deriving their authority from the laws of Virginia." *Marye* v. *Baltimore & Ohio Railroad*, 127 U. S. 117.

IV. Under the law as construed by the state court the tax under challenge is in part illegal because it is a unit charge mainly laid upon incorporations and franchises not created or granted by Ohio, or upon business operations carried on outside its boundaries.

"If the legislature of a State should enact that the citizens or property of another State or country should be taxed in the same manner as the persons and property within its own limits and subject to its authority, or in any other manner whatsoever, such a law would be as much a nullity as if in conflict with the most explicit constitutional inhibition. Jurisdiction is as necessary to valid legislation as to valid judicial action." *St. Louis* v. *Ferry Co.*, 11 Wall. 423, 430.

Recognizing that in such cases the taxing jurisdiction of a State is not exclusive, but concurrent with other States, the assessment of public charges against this class of corporations has always been levied only upon the State's proportional share of the whole property, franchise, stock, or earnings. *Delaware Railroad Tax Case*, 18 Wall. 206; *Erie Railway* v. *Pennsylvania*, 21 Wall. 492; *State Railroad Tax Cases*, 92 U. S. 575, 610; *Telegraph Co.* v. *Texas*, 105 U. S. 460;

*West. Un. Tel. Co.* v. *Massachusetts*, 125 U. S. 530; *Pullman Palace Car Co.* v. *Pennsylvania*, 141 U. S. 18; *Horn Silver Mining Co.* v. *New York*, 143 U. S. 305; *Maine* v. *Grand Trunk Railway*, 142 U. S. 217.

V. Upon the theory that the entire organization tax of $52,000 was assessed only upon the Ohio constituent of the interstate copartnership, the exaction plainly imposes an unequal and discriminating burden in violation of the Fourteenth Amendment.

*Mr. J. K. Richards*, Attorney General of the State of Ohio, for defendant in error.

MR. JUSTICE WHITE, after stating the case, delivered the opinion of the court.

With the question whether the sum paid was authorized by the Ohio statutes, or constituted a fee, a license, or a tax, under the Ohio laws and constitution, we are not concerned. The writ of error brings before us only the Federal question. *Watson* v. *Mercer*, 8 Pet. 88; *Barbier* v. *Connolly*, 113 U. S. 27. Nor does the determination of the Federal question render it necessary to define the nature of the charge imposed; for, whether this charge be viewed as a tax, a license, or a fee, if its exaction violated the interstate commerce clause of the Constitution of the United States, or involved the assertion of the right of a State to exercise its powers of taxation beyond its geographical limits, it was void, whatever might be the technical character affixed to the exaction.

The purpose of the tender of the articles of consolidation to the Secretary of State was to secure to the consolidated company certain powers, immunities, and privileges which appertain to a corporation under the laws of Ohio. The rights thus sought could only be acquired by the grant of the State of Ohio, and depended for their existence upon the provisions of its laws. Without that State's consent they could not have been procured. Revised Statutes of Ohio, sections 3239, 3382, and 3384 *b*, amended by act of April 11, 1890, 87 Ohio

Laws, 183, 184. Hence, in seeking to file its articles of incorporation, the company was applying for privileges, immunities, and powers which it could by no means possess, save by the grace and favor of the constitution of the State of Ohio and the statutory provisions passed in accordance therewith. At the time the articles were presented for filing, the statute law of the State charged the parties with notice that the benefits which it was sought to procure could not be obtained without payment of the sum which the Secretary of State exacted. As it was within the discretion of the State to withhold or grant the privilege of exercising corporate existence, it was, as a necessary resultant, also within its power to impose whatever conditions it might deem fit as prerequisite to corporate life. The act of filing, constituting, as it did, a claim of a right to the franchise granted by the state law, carried with it a voluntary assumption of any burden with which the privilege was accompanied, and without which the right of corporate existence could not have been procured. We say *voluntary* assumption, because, as the claim to the franchise was voluntary, the assumption of the privilege which resulted from it partook necessarily of the nature of the claim for corporate existence. Having thus accepted the act of grace of the State and taken the advantages which sprang from it, the company cannot be permitted to hold on to the privilege or right granted, and at the same time repudiate the condition by the performance of which it could alone obtain the privilege which it sought.

That the right to be a state corporation depends solely upon the grace of the State, and is not a right inherent in the parties is settled. Thus, in *California* v. *Pacific Railroad Co.*, 127 U. S. 1, 40, speaking through Mr. Justice Bradley, the court said : " A franchise is a right, privilege, or power of public concern, which ought not to be exercised by private individuals at their mere will and pleasure, but should be reserved for public control and administration. . . . Under our system, their existence and disposal are under the control of the legislative department of the government, and they cannot be assumed or exercised without legislative authority.

. . . No private person can take another's property, even for public use, without such authority; which is the same as to say, that the right of eminent domain can only be exercised by virtue of a legislative grant. This is a franchise. No persons can make themselves a body corporate and politic without legislative authority. Corporate capacity is a franchise. The list might be continued indefinitely."

In *Home Insurance Co.* v. *New York*, 134 U. S. 594, 599, through Mr. Justice Field, we said: "The right or privilege to be a corporation, or to do business as such body, is one generally deemed of value to the corporators, or it would not be sought in such numbers as at present. It is a right or privilege by which several individuals may unite themselves under a common name, and act as a single person with a succession of members, without dissolution or suspension of business and with a limited individual liability. The granting of such right or privilege rests entirely in the discretion of the State."

These citations only reiterate principles established beyond controversy by a series of decisions. *Bank of Augusta* v. *Earle*, 13 Pet. 519; *Lafayette Insurance Co.* v. *French*, 18 How. 404; *Paul* v. *Virginia*, 8 Wall. 168; *Ducat* v. *Chicago*, 10 Wall. 410.

Nor is the question at issue affected by the fact that some of the constituent elements which entered into the consolidated company were corporations owning and operating property in another State. The power of corporations of other States to become corporations, or to constitute themselves a consolidated corporation under the Ohio statutes, and thus avail of the rights given thereby, is as completely dependent on the will of that State as is the power of its individual citizens to become a corporate body, or the power of corporations of its own creation to consolidate under its laws. *Bank of Augusta* v. *Earle*, *supra; Lafayette Insurance Co.* v. *French*, *supra; Paul* v. *Virginia*, 8 Wall. 168, 181.

In the latter case, speaking through Mr. Justice Field, we observed: " Now a grant of a corporate existence is a grant of special privileges to the corporators, enabling them to act

for certain designated purposes as a single individual, and exempting them (unless otherwise specially provided) from individual liability. The corporation, being the mere creation of local law, can have no legal existence beyond the limits of the sovereignty where created. As said by this court in *Bank of Augusta* v. *Earle*, ' It must dwell in the place of its creation, and cannot migrate to another sovereignty.' The recognition of its existence, even, by other States, and the enforcement of its contracts made therein depend purely upon the comity of these States — a comity which is never extended where the existence of the corporation or the exercise of its powers are prejudicial to their interests or repugnant to their policy. . . . At the present day corporations are multipled to an almost indefinite extent. There is scarcely a business pursued requiring the expenditure of large capital, or the union of large numbers, that is not carried on by corporations. It is not too much to say that the wealth and business of the country are to a great extent controlled by them. And if, when composed of citizens of one State, their corporate powers and franchises could be exercised in other States without restriction, it is easy to see that, with the advantages thus possessed, the most important business of those States would soon pass into their hands. The principal business of every State would, in fact, be controlled by corporations created by other States."

It follows from these principles that a State, in granting a corporate privilege to its own citizens, or, what is equivalent thereto, in permitting a foreign corporation to become one of the constituent elements of a consolidated corporation organized under its laws, may impose such conditions as it deems proper, and that the acceptance of the franchise in either case implies a submission to the conditions without which the franchise could not have been obtained. In *Paul* v. *Virginia, supra,* the court said, p. 181 : " Having no absolute right of recognition in other States, but depending for such recognition and the enforcement of its contracts upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those States may think proper

to impose.   They may exclude the foreign corporation entirely ;
they may restrict its business to particular localities, or they
may exact such security for the performance of its contracts
with their citizens as in their judgment will best promote the
public interest."

In the case of the *Railroad Co.* v. *Maryland*, 21 Wall. 456,
472, considering a grant by the State of Maryland to a rail-
road company of a right to build a branch from Baltimore to
Washington, upon condition that the company should pay
semi-annually to the State one-fifth of the amount received
from the transportation of passengers over the road authorized,
the court spoke as follows : " The State could have built the
road itself and charged any rate it chose, and could thus have
filled the coffers of its treasury without being questioned
therefor.   How does the case differ, in a constitutional point
of view, when it authorizes its private citizens to build the
road and reserves for its own use a portion of the earnings?
We are unable to see any distinction between the two cases.
In our judgment there is no solid distinction.   If the State,
as a consideration of the franchise, had stipulated that it
should have all the passenger-money, and the corporation
should have only the freight for the transportation of mer-
chandise, and the corporation had agreed to those terms, it
would have been the same thing.   It was simply the exercise
by the State of absolute control over its own property and
prerogatives."   And the contention that the charge imposed
a burden upon interstate commerce was thus answered: " It
may, incidentally, affect transportation, it is true; but so does
every burden or tax imposed on corporations or persons
engaged in that business.   Such burdens, however, are im-
posed *diverso intuitu*, and in the exercise of an undoubted
power.   The State is conceded to possess the power to tax its
corporations, and yet every tax imposed on a carrier corpora-
tion affects more or less the charges it is compelled to make
upon its customers.   So, the State has an undoubted power to
exact a bonus for the grant of a franchise, payable in advance
or *in futuro;* and yet that bonus will necessarily affect the
charge upon the public which the donee of the franchise will

be obliged to impose. The stipulated payment in this case, indeed, is nothing more or less than a bonus."

In *Ducat* v. *Chicago, supra,* the court said: "The only difference between the statute of Virginia and that of Illinois is that the latter is more onerous to the companies than the former. The difference is in degree, not in principle." That was a case in which an insurance company was not only required to comply with the general law of the State of Illinois, but also to pay a portion of its premium to the city of Chicago as a condition of doing business therein.

The case of *Philadelphia Fire Association* v. *New York,* 119 U. S. 110, 119, involved the validity of a tax imposed by the State of New York on an insurance company which had been incorporated in Pennsylvania. Mr. Justice Blatchford, in delivering the opinion of the court, said: "This Pennsylvania corporation came into the State of New York to do business by the consent of the State under this act of 1853, with a license granted for a year, and has received such license annually, to run for a year. It is within the State for any given year under such license, and subject to the conditions prescribed by statute. The State, having the power to exclude entirely, has the power to change the conditions of admission at any time, for the future, and to impose as a condition the payment of a new tax or a further tax as a license fee. If it imposes such license fee as a prerequisite for the future, the foreign corporation, until it pays such license fee, is not admitted within the State or within its jurisdiction. It is outside, at the threshold, seeking admission, with consent not yet given."

Indeed, the cases illustrating this doctrine are too numerous for review, and need only be referred to. *Society for Savings* v. *Coite,* 6 Wall. 594; *Provident Institution* v. *Massachusetts,* 6 Wall. 611; *Hamilton Co.* v. *Massachusetts,* 6 Wall. 632; *State Tax on Railway Gross Receipts,* 15 Wall. 284; *Railroad Co.* v. *Peniston,* 18 Wall. 5; *Delaware Railroad Tax Case,* 18 Wall. 206; *State Railroad Tax Cases,* 92 U. S. 575; *Philadelphia & Southern Steamship Co.* v. *Pennsylvania,* 122 U. S. 326; *California* v. *Pacific Railroad Co.,* 127 U. S. 1; *Home*

*Insurance Co.* v. *New York*, 134 U. S. 594; *Maine* v. *Grand Trunk Railway*, 142 U. S. 217.

The question here is not the power of the State of Ohio to lay a charge on interstate commerce, or to prevent a foreign corporation from engaging in interstate commerce within its confines, but simply the right of the State to determine upon what conditions its laws as to the consolidation of corporations may be availed of.

Considering, as we do, that the payment of the charge was a condition imposed by the State of Ohio upon the taking of corporate being or the exercise of corporate franchises, the right to which depended solely on the will of that State, and hence that liability for the charge was entirely optional, we conclude that the exaction constituted no tax upon interstate commerce, or the right to carry on the same, or the instruments thereof, and that its enforcement involved no attempt on the part of the State to extend its taxing power beyond its territorial limits.

*Judgment affirmed.*