## BADGER DOME OIL CO. v. HALLAM.*
### No. 11181.

Circuit Court of Appeals, Eighth Circuit.
Oct. 31, 1938.

*Rehearing denied Dec. 5, 1938.

P. A. Wells and Louis B. Schwartz, both of Minneapolis, Minn. (John P. Devaney,. of Minneapolis, Minn., on the brief), for appellant.

Oscar Hallam, of St. Paul, Minn. (Richard A. Golling, of St. Paul, Minn., on the brief), for appellee.

Before THOMAS and BOOTH, Circuit Judges, and SULLIVAN, District Judge.

### THOMAS, Circuit Judge.

This is a suit in equity brought by the plaintiff, Badger Dome Oil Company, a corporation, against Oscar Hallam, Trustee, to obtain a decree adjudging that the plaintiff is the owner of the mineral rights of a tract of land situated in Park County, Wyoming; to require the defendant to account for the profits derived from leasing such mineral rights; and to enjoin defendant from further interfering with plaintiff's alleged rights. The defendant. claims ownership of the entire fee under a tax deed and that a judgment of the state court in a suit to quiet title is res judicata of the rights of the parties. The decree of the district court was for the defendant and the plaintiff appeals.

The controversy involves ownership of the title to the mineral rights in a tract of land of about 2,100 acres described by government subdivisions in the complaint. The case was submitted on an agreed statement of facts. Both parties derive title through Grant Van Sant. On January 24, 1920, he was the owner in fee of the entire tract. On that day he gave a contract for deed to the Brockway Real Estate Company, reserving . the mineral rights. The contract was recorded February 14, 1920. By its terms the seller agreed, upon compliance of the buyer, to convey the surface of the land by special warranty deed, or to make conveyance at the buyer's option when 50% of the purchase price was paid, the buyer to give a mortgage for the balance, and to pay taxes commencing with the 1920 assessment.

By successive assignments Clark Fork Alfalfa and Stock Company acquired the vendee's interest under the contract on March 16, 1920, and the assignment was recorded on the following day.

On September 15, 1920, Grant Van Sant gave a quit claim deed conveying the mineral rights which he had reserved in the land under his contract of January 24th to the plaintiff, Badger Dome Oil Company, which deed was recorded October 28, 1920.

On October 16, 1920, Grant Van Sant, in performance of his contract for deed, gave a special warranty deed to Clark Fork Alfalfa and Stock Company, reserving the mineral rights therein as they had been reserved in the contract. This deed was. recorded March 17, 1937.

On October 23, 1920, the Clark Fork Alfalfa and Stock Company gave a trust deed conveying the title to the land to the Van Sant Trust Company and C. R. Bedall to secure an indebtedness of $50,000, which was recorded January 27, 1921. The description of the land in the trust deed did not mention the mineral rights, but the Van Sant Trust Company, mortgagee and trustee for the bondholders, had constructive knowledge of the reservation of the mineral rights through the recording of the various instruments containing the reservations and actual knowledge because Grant Van Sant was president of the trust company. The mortgagors agreed to pay the taxes on the land and the interest on the bonds secured by the trust deed and the principal of the bonds as they became due. The trustee was given the right to pay taxes and to add the amount so paid to the indebtedness secured by the trust deed. It was further provided that in case of default the trustee should be entitled to possession with the right to manage the property and apply the rents to the payment of taxes and interest.

There were no taxes assessed exclusively against the mineral rights, because by the laws of Wyoming (Chapter 179, Sec. 2906, Wyoming Compiled Statutes 1920) mineral rights are not assessed separately from the surface before development, and these mineral rights had not been worked.

On March 12, 1921, the secretary of the Clark Fork Alfalfa and Stock Company, the owner of the title (except the mineral rights), in accordance with the laws of Wyoming, returned the land for assessment, but he did not mention the mineral reservation in the return. The land was assessed for 1921 without mention of the mineral rights. The taxes were not paid for 1921, and on September 5, 1922, the land was sold for the delinquent taxes. On June 8, 1925, the certificate of purchase, which had been issued to Joseph C. Ewing, the purchaser, was assigned to Walter W. Hulce, trustee, who had succeeded the Van Sant Trust Company as trustee under the trust deed. The time for redemption from the tax sale expired on November 12, 1925, notice having been duly given thereof by Hulce. A tax deed was issued to Hulce, trustee, and recorded on November 13, 1925, in which no mention was made of any mineral reservations.

In the meantime, on August 16, 1923, a lis pendens was filed in the district court of Park County, Wyoming, which recited that an action had been commenced in that court to foreclose the trust deed. The indebtedness secured by the trust deed has not been paid and the trust deed has not been foreclosed. In February, 1925, Hulce as trustee demanded and was given possession of the land because of default in payments of interest.

On November 30, 1925, Hulce, trustee, commenced an action in the state court of Wyoming to quiet title to the land in which action the appellant was made a party defendant as claiming an interest in the land, but the description in the complaint made no reference to the mineral rights. In that suit notice was not served personally upon the appellant Badger Dome Oil Company; but jurisdiction was sought to be obtained by two forms of substituted service under the Wyoming statutes, Laws 1921, c. 19; Rev.St.1931, § 89-817 et seq.: (1) By service upon the Secretary of State and (2) by publication. The appellant did not appear. On February 4, 1926,

a default decree, reciting that appellant "though having been duly and regularly served with summons" failed to appear, was entered. It was decreed that Hulce was the owner of the real property described in the petition and entitled to possession and that any claims of appellant were inferior in right and subsequent in time to the claims of Hulce, trustee, and title was quieted in him to the land as described "together with the improvements thereon, the appurtenances and water rights and right of way for irrigation ditches" etc., but not referring to any mineral rights.

Prior to the commencement of the present suit Hulce resigned as trustee under the trust deed and conveyed the land to his successor in trust, the appellee herein.

The appellant claims (1) that the taxes represented by the tax certificate which Hulce bought were not assessed against the mineral rights, and therefore did not bind them; (2) that the purchase of the tax certificate by Hulce constituted payment of the taxes, even as to the land; (3) that jurisdiction of appellant was not obtained by the state court in the action brought by Hulce to quiet title; and (4) that in the suit to quiet title jurisdiction was not obtained by the state court over the subject matter of this suit, i. e. the mineral rights.

The appellee claims (1) that the tax title was a good title and covered the mineral rights; (2) that the present action is a collateral attack upon the decree to quiet title; (3) that the description of the land in that action was sufficient to give the court jurisdiction over the mineral rights; and (4) that the service of summons upon appellant was sufficient under the laws of Wyoming to give the court jurisdiction over the person of appellant. Incidental to these major claims of appellee he also urges that appellant is barred by the statute of limitations and by laches. These minor claims are dependent upon the validity of the tax deed and must stand or fall with it.

It is apparent that decision in this court turns upon the question of the effect to be given to the decree of the state court of Wyoming in the suit by Hulce to quiet title. Two questions raise the matters to be considered: (1) What contentions in this court, if any, were adjudicated in

that decree? and (2) Did the state court in that case have jurisdiction of the person of the appellant?

█ With reference to the first question, it is the rule in the federal courts that an adjudication by a federal court is conclusive of all questions of both law and fact upon which the rights of the parties depend, of those which might have been determined as well as those which were. Dickinson v. Orr, 8 Cir., 94 F.2d 536, 539. But a federal court will give to the judgment of a state court the same effect that is given to it by the courts of the state in which it is rendered, Dickinson v. Orr, supra. The scope of the federal rule and of the Wyoming rule is practically identical. In the case of Hennessy v. Chicago, B. & Q. R. Co., 24 Wyo. 305, 157 P. 698, 701, the Supreme Court of Wyoming said that "the judgment in the former action adjudicated, not only the matters, grounds, and reasons for a recovery then pleaded, but also all matters which could properly have been set forth and determined in that suit."

█ Applying this rule to the issues and contentions presented in the present suit it is apparent that had the Badger Dome Oil Company appeared in the suit to quiet title in the district court of Wyoming and contested the plaintiff's claims in that action all questions of rights dependent upon local law might have been adjudicated. Had that court erred in any particular the remedy was by appeal. Clearly the question of whether or not the taxes for 1921 were assessed against the mineral rights was an issue which might properly have been adjudicated in that action. So also was the question of whether the purchase of the tax certificate by Hulce as trustee under the trust deed constituted payment of the taxes. These questions inhered in Hulce's claim in that case that he was owner of the land, entitled to the immediate possession, and· that his title was superior to any right or claim of the Badger Dome Oil Company. These questions have, therefore, been adjudicated and can not again be raised by collateral attack in this suit. The Wyoming court therefore had jurisdiction of the subject matter of this suit, and that decree determined the title to the mineral rights in controversy here and is res judicata upon that point in this action.

There remains for consideration the question of whether or not the state court of Wyoming in the suit to quiet title had jurisdiction of the person of the Badger Dome Oil Company, appellant here and a defendant in that suit. This depends upon the legal sufficiency of the substituted service of summons under the laws of Wyoming. In accordance with the statutes two forms of service were attempted: (1) By publication and (2) by service upon the Secretary of State. We think the effort to secure service by publication failed in material respects to comply with the requirements of the statutes, and that if jurisdiction depended upon that effort alone to secure service it is doubtful at least whether the adjudication would be binding in this suit; but since we are convinced that service upon the Secretary of State was adequate we pass that question without deciding it.

We turn then to a consideration of the matter of the substituted service upon the Secretary of State.

On December 21, 1926, after completion of the attempt to serve notice upon appellant in the suit to quiet title by publication, an alias summons was issued to the Sheriff of Park County, Wyoming, for service. On December 29, 1926, the summons was returned, filed and endorsed by the sheriff. In the endorsement the sheriff stated that he had served the summons by searching diligently for Badger Dome Oil Company, a Wyoming corporation, and R. L. Donley, its agent, and that he found that Donley had been deceased for a period of approximately two years and that there was no agent for service of said corporation in Park County, Wyoming. He thereupon prepared a registered letter which was mailed to the corporation in care of the Secretary of State at the state capitol. It is not claimed that the form or contents of the notice were in any way inadequate to meet the requirements of a legal notice. Neither the summons and complaint, nor any copy of them, were ever forwarded to appellant.

The appellant insists that the service of notice was insufficient to confer jurisdiction upon the state court for two reasons: first, because the statute was unconstitutional in that it did not require the Secretary of State to send the notice of the pendency of the action by mail or otherwise to the appellant; and, second, because the corporation's agent Donley had not resigned and his death not being provided for in the statute the law did not

authorize substituted service upon the Secretary of State.

██ The first contention, that the statute is unconstitutional for the reason that it did not require the notice to be mailed to appellant, is without merit. Appellant was a Wyoming corporation. The laws of that state were a part of its charter. 14 C.J. 117; Interstate Consol. St. R. Co. v. Massachusetts, 207 U.S. 79, 28 S.Ct. 26, 52 L.Ed. 111, 12 Ann.Cas. 555. In granting a corporate charter a state may impose such conditions as it deems proper; and when the corporation accepts the charter it is bound by the conditions prescribed by the state. Ashley v. Ryan, 153 U.S. 436, 443, 14 S.Ct. 865, 38 L.Ed. 773; Chicago Title & Trust Co. v. Wilcox Bldg. Corp., 302 U.S. 120, 127, 58 S.Ct. 125, 128, 82 L.Ed. 147. A state of course may not impose unreasonable or arbitrary terms respecting service of notice; but the requirement that the Secretary of State shall be an agent upon whom service may be had when the corporation fails to designate an agent for service within the state without requiring the notice to be forwarded to the corporation is neither unreasonable nor arbitrary. Washington v. Superior Court, 289 U.S. 361, 365, 53 S. Ct. 624, 626, 77 L.Ed. 1256, 89 A.L.R. 653.

The second contention, that the statute did not authorize service upon the Secretary of State, is open to argument, but, we think, is without merit. The pertinent statutes read: "That whenever any domestic or foreign corporation fails to comply with the provisions of Sections 5042, 5044, 5045 and 5046 of the Wyoming Compiled Statutes, 1920, Notice of Process required by law to be served upon such corporation, may be served upon the Secretary of State, who is hereby made the agent of such delinquent corporation, upon whom service of such Notice and Process, as may be by law required to be given or served on such corporation and such service of Notice or Process may be made on such Secretary of State by registered mail and when said Notice or Process is so served upon said Secretary of State, such service shall be binding upon such delinquent domestic or foreign corporation." Section 1, Ch. 19, Session Laws of Wyoming, 1921.

Section 5042 provides that:

"Every corporation heretofore organized under the laws of this state shall, within ninety days after February 20th, 1903, file with the secretary of state a certificate,

signed by its president or secretary, designating the location (by town or city, giving street and number, if any there be) of its principal office in this state, and the name of the agent in charge thereof, and upon whom process against said corporation may be served; such office of any domestic corporation shall be and be deemed the office and postoffice address of such domestic corporation, its officers, trustees and stockholders, and whenever, by the provisions of any law of this state, any notice is required to be given to the corporation, its officers, stockholders or trustees, such notice shall be sent by mail or otherwise, as the law may require, to such registered office, and such notice so given shall be and be deemed sufficient notice; any process made at such registered place of business and upon such designated agent, shall be and be deemed sufficient service upon such corporation. Every corporation hereafter organized under the laws of this state shall, within ninety days after filing with the secretary of state its certificate of incorporation, file with said officer the certificate herein provided for."

Section 5044 refers to foreign corporations.

Section 5045 provides that any resident agent appointed or designated by a domestic corporation under section 5042 shall have the right to resign such agency by giving 30 days' notice in writing to any officer of the corporation and by filing a copy of such notice in the office of the Secretary of State. At the end of the 30 day period the person so resigning "shall not be further recognized as the duly designated agent" of the corporation.

Section 5046 provides that upon the resignation of such an agent of a corporation it shall be the duty of the corporation to file with the Secretary of State within the 30 day period prior to the effective date of the resignation a certificate designating a successor, in form similar to the original certificate of appointment. Failure to designate a new agent in case of the resignation of the acting agent results in forfeiture of the corporation's franchise.

██ It is appellant's contention that since in the present instance the only conditions shown to exist are "that the designated agent had died" and that the corporation could not be served with summons within the state the statute providing for substituted service upon the Secretary of

State was not applicable. This contention depends upon the construction to be placed upon the statutes. The primary object in the interpretation of any statute is to ascertain, if possible, and to give effect to, the intention of the legislature that enacted the law; and, if consonant with its terms, it must have an interpretation that will advance the purpose and effect the remedy intended. Baxter v. McGee, 8 Cir., 82 F.2d 695, 700; Interstate Commerce Commission v. Baird, 194 U.S. 25, 38, 24 S.Ct. 563, 48 L.Ed. 860. It has often been stated that statutes in derogation of the common law must be strictly construed by the courts, but that rule must not be carried so far as to defeat plain legislative intent. Jamison v. Encarnacion, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082; Campbell Contracting Co. v. Maryland Casualty Co., 4 Cir., 21 F.2d 909. In Jamison v. Encarnacion, supra, the court said [page 442]: "The rule that statutes in derogation of the common law are to be strictly construed does not require such an adherence to the letter as would defeat an obvious legislative purpose or lessen the scope plainly intended to be given to the measure." No decision of the Wyoming courts construing the statutes in question has been called to our attention, and we have found none. Reading the sections together, however, it is entirely clear that the ultimate purpose of the legislature was to require corporations organized under the laws of the state and doing business within the state to maintain an office in the state within the jurisdiction of its courts where summons could be served upon it, and an agent at such office upon whom such service could be made; and for failure to maintain such an office and such an agent (1) the Secretary of State was designated as agent for service and (2) the corporation franchise was subject to forfeiture. It is true specific provision is made for the appointment of a successor in case of resignation of the designated agent. One reason for making special provision for such a situation in Sections 5045 and 5046 no doubt was to avoid mistakes on the part of the officer serving the summons. These sections have no application in case a vacancy in the office of agent occurs for any reason other than by his resignation. For guidance in case of a vacancy for any other reason one must read section 5042. That section provides that every corporation heretofore or hereafter organized under the laws of Wyoming shall, within 90 days after February 20, 1903, or after incorporation file with the Secretary of State a certificate designating the location of its principal office in the state and the name of its agent in charge, and that service of summons may be made upon the corporation by service upon such agent at such office.

Does the first appointment of an agent by the corporation within the 90-day period exhaust the power of appointment under the statute, except in case of resignation of the agent, and relieve a domestic corporation from maintaining an office and agent for service within the state? We think not. To so hold would thwart the purpose of the legislature. An agency may be terminated in many ways other than by resignation, and the legislature can not be presumed to have been ignorant of that fact. Death revokes an agency. The corporation may discharge him. If he moves away from the town where the principal office is maintained and absents himself from the state apparently he could not be served with summons under the statute. A guardian may be appointed for him as an incompetent. To say in any of these instances that section 5042 is not broad enough to authorize and require the appointment of a successor results in an absurdity. Such cannot be the meaning of the section. After the designated agent had been dead for two years, and the corporation had failed to make a new appointment, the law authorized substituted service upon the Secretary of State.

Further, the decree in the suit to quiet title in the state court recites that the Badger Dome Oil Company was "duly and regularly served with summons." The record upon which the court passed disclosed all the steps taken to obtain service. To arrive at the conclusion that the summons was duly and regularly served the court was called upon to construe the statute. In the absence of any higher authority from the state of Wyoming the court's construction is persuasive, if not binding, here upon this collateral attack. It is presumed that every court of general jurisdiction determines every matter upon which its jurisdiction depends. It was for the Wyoming court, whose decree is sought to be impeached, not only to decide the sufficiency of the notice of the pending action, but the construction of the statute and the legal effect of the facts recited in the sheriff's endorsement on the summons.

Manson v. Duncanson, 166 U.S. 533, 17 S. Ct. 674, 41 L.Ed. 1105. The decision is not clearly wrong; and, as pointed out supra, the construction of the statute in favor of jurisdiction is a reasonable one. We are not disposed therefore to disturb it.

For the reason that the decree and judgment of the state court of Wyoming in the suit to quiet title is res judicata of the issues in this suit the decree and judgment of the district court is affirmed.

