Anthony **Pellegrino** and
Eileen Olopai Pellegrino,
Plaintiffs/Appellees,
**v.**
**Commonwealth** of the
Northern Mariana Islands,
Secretary of Finance,
Defendant/Appellant.
Appeal No. 97-001
Civil Action No. 96-0533
April 13, 1999

TAYLOR, Justice Pro Tem:

¶1 ■ The Secretary of Finance[2] of the Commonwealth of the Northern Mariana Islands ("Finance") appeals the December 20, 1996, Superior Court order granting partial summary judgment in favor of Anthony and Eileen Pellegrino ("Pellegrinos"). We have jurisdiction pursuant to Article IV, section 3 of the Commonwealth Constitution. N.M.I. Const. art. IV, § 3 (1997). We affirm.

## ISSUES PRESENTED AND STANDARDS OF REVIEW

¶2 Finance presents the following issues for our review:

1. Whether the Superior Court erred in admitting and relying on evidentiary attachments to the Pellegrino's reply brief to which the Commonwealth did not have an opportunity to respond, were not authenticated and would not be admissible at trial.

2. Whether the Superior Court erred in holding that dividend and interest income earned by a person was not subject to the CNMI Gross Revenue Tax in the years 1992-1994.

¶3 ■ We review an order granting summary judgment de novo. *Diamond Hotel Co., Ltd. v. Matsunaga*, 4 N.M.I. 213, 216 (1995), aff'd, 99 F.2d 296 (9th Cir. 1996). To affirm, this Court must find that there was no genuine issue of material fact and the court below correctly applied the substantive law. We may also affirm if we find that the result is correct under a different theory. *Rios v. Marianas Pub. Land Corp.*, 3 N.M.I. 512, 518 (1993). We view evidence and inferences to be drawn in favor of the non-moving party. *Id.*

¶4 ■ The applicable standard of review of a lower court's evidentiary decisions in the context of summary judgment proceedings is abuse of discretion. *See Maffei v. Northern Insurance Company of New York*, 12 F.3d 892, 897 (9th Cir. 1993). Reversal is only warranted if the erroneous admission or exclusion of evidence caused prejudice. *Id.* (citing *Pau v. Yosemite Park & Curry Co.*, 928 F.2d 880, 888 (9th Cir. 1991)).

¶5 ■ Finally, we review questions of law de novo. *Agulto v. Northern Marianas Inv. Group, Ltd.*, 4 N.M.I. 7, 9 (1993).

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 Pursuant to 4 CMC § 1301-1305 ("Gross Revenue

Argued and Submitted April 16, 1998

Counsel for appellant: Robert B. Dunlap, II and Sally B. Pfund, Office of the Attorney General, Saipan.

Counsel for appellee: Gregory J. Koebel, Saipan. (O'Connor, Berman, Dotts & Banes)

BEFORE: TAYLOR[1], BELLAS, and MANIBUSAN, Justices Pro Tem.

---

[1] The Honorable Marty W.K. Taylor was sitting as Chief Justice when this appeal was argued and submitted, and has subsequently been appointed to the panel as Justice Pro Tem after his retirement effective December 5, 1998.

[2] The Director of Finance was redesignated as the Secretary of Finance pursuant to Executive Order 94-3, § 106(a), issued June 24, 1994.

Tax"), Finance assessed a tax in the amount of $237,979 against the Pellegrinos for taxpayers' interest and dividend income earned during 1992 through 1994 from their Commonwealth bank accounts and corporate shares.[3] The Pellegrinos reported rental income on their local Business Gross Revenue Tax Return ("BGRT"), but not the dividend and interest income. The Pellegrinos did not pay the assessment and sought a declaratory judgment from the Superior Court that the interest and dividend income earned was not subject to the Gross Revenue Tax.

¶7 The Pellegrinos filed a motion for summary judgment alleging that there were no material facts in dispute and that the Superior Court could decide the case as a matter of law. Later, the parties entered into a stipulation of undisputed facts. Finance filed an opposition to the Pellegrinos' motion and a cross motion for summary judgment.

¶8 On August 16, 1996, the Pellegrinos filed forty-two pages of factual exhibits with the Superior Court. On August 20, 1996, the Pellegrinos filed an additional document with the Superior Court. On August 20, 1996, Finance filed a motion to strike the Pellegrinos' evidentiary submissions. After the hearing regarding the evidence, the Superior Court took the cross motions for summary judgment and the motion to strike under advisement.

¶9 On December 29, 1996, the Superior Court issued its order on the cross-motions for summary judgment, finding in favor of the Pellegrinos. *Pellegrino v. Commonwealth of the Northern Mariana Islands Secretary of Finance*, Civil Action No. 96-0533 (N.M.I. Super. Ct. Dec. 29, 1996) (Order Granting Partial Summary Judgment) ("order"). The Superior Court relied on a letter from accountant, David Welch, to make a factual finding that prior to the enactment of the regulation the "CNMI did not tax interest and dividend income as gross revenue under the [Gross Revenue Tax]." The Superior Court found that the legislature did not intend that type of income in question to be subject to the Gross Revenue Tax. The motion to strike was not addressed. Finance timely appealed.

## ANALYSIS

### I. Whether the Trial Court Erred in Relying on Evidence Which Was Submitted Too Late to Permit Evidentiary Responses

¶10 ■ The decision to admit or exclude evidence is within the sound discretion of the trial court. *Pangelinan v. Unknown Heirs of Mangarero*, 1 N.M.I. 387, 393 (1990). An appellant has the burden to show that the trial

court clearly abused that discretion. *Id.* Absent such abuse of discretion, the appellate court should affirm the decision of the trial court. *Id.*

¶11 A trial court may not weigh the evidence and make findings on disputed issues in a motion for summary judgment. *Rios v. Marianas Public Land Corp.*, 3 N.M.I. 512, 519 (1993). In this case, the only disputed fact raised by Welch's letter was whether or not the Division of Revenue and Taxation had previously attempted to tax individuals on interest and revenue income through the Gross Revenue Tax. However, the past practices of Finance mentioned in the disputed document was not an issue of material fact necessary to determine the correct interpretation of the statute concerning gross revenue. The court will interpret a statute based upon the canons of statutory interpretation. *Nansay Micronesia Corp. v. Govendo*, 3 N.M.I. 12, 18 (1992). Here, the trial court only needed to determine how the statute should be read and whether it was legal. Welch's letter was presented to the court on a peripheral issue only, not the ultimate issue of law in the case, the interpretation of the statute.

¶12 ■ The fact that the trial court addressed a disputed peripheral issue in making its summary judgment decision does not render the ruling erroneous. The admission of irrelevant evidence does not constitute grounds for reversal if it does not affect the substantial rights of the parties. *Cheney v. Hailey*, 686 P.2d 808, 813 (Colo. Ct. App. 1984); *see also Commonwealth v. Bergonia*, 3 N.M.I. 22, 28 (1992) (error in trial court's decision to admit evidence is to be disregarded if it does not affect substantial rights of appellant).

¶13 We therefore find that any error by the trial court in relying on the disputed document does not warrant reversal.

### II. Whether the Trial Court Erred in Holding that Dividend and Interest Income Earned by a Person was not Subject to the CNMI Gross Revenue Tax in the Years 1992 Through 1994

#### A. The Gross Revenue Tax

¶14 The Gross Revenue Tax states: "There is imposed an annual tax upon the gross revenues earned by every business, except as otherwise provided in this Chapter." 4 CMC § 1301. This informs taxpayers that for the Business Gross Revenue Tax to apply there must be "gross revenue" and a "business". The definitions of "gross revenue" and "business" that applied during the years 1992-1994 are as follows:

> "Gross Revenue" means the total amount of money or the value of other consideration received from selling real or personal property in the Commonwealth, from leasing property

---

[3] The discussion is limited to the tax years of 1992-1994.

employed in the Commonwealth, or from performing services in the Commonwealth. Gross revenue includes the gross receipts, cash or accrued, of a person received as compensation for personal services not in the form of salaries or wages as defined in this section, and the gross receipts of a business derived from trade, business, commerce or sales and the value proceeding or accruing from the sale of tangible personal property, or service, or both, and all receipts, actual or accrued by reason of the capital of the business engaged in, including interest, discount, rentals, royalties, fees, or other emoluments however designated and without any deductions on account of the cost of property sold, the cost of materials used, labor cost, taxes, royalties, interest or discount paid or any other expenses. Gross revenue shall not include the following:

> (1) Refunds and cash discounts allowed and taken;
> (2) Money received and held in a fiduciary capacity; or
> (3) Wages and salaries which are taxed under Chapter 2 of this Act.

4 CMC § 1103 (k).

> "Business" includes all activities, whether personal, professional or incorporated, carried on within the Commonwealth for either direct or indirect economic benefit, *as determined by the Director*, provided, however, one who qualifies as an employee under this section shall not be considered a business."

4 CMC § 1103(c) (emphasis added).

¶15 During the tax years in question, Finance further defined the term "business" in the Revenue and Tax Regulations No. 1200:

> Unless specifically excluded by 4 CMC Section 1103(c) and other provisions of law and these regulations, every person who carries on any activity within the Commonwealth for either direct or indirect economic benefit shall constitute a business and therefore is subject to the gross revenue tax under 4 CMC Section 1301.

*Revenue and Tax Regulations No. 1200*, 14 Com. Reg. No. 4 ("Regulation"), § 1202.1 (1992).

> The lease, rental, or sale of real or personal property, tangible or intangible, and other receipts in excess of $5,000, whether a one time or isolated sale and/or receipts or whether or not connected with a trade or business, shall be deemed subject to the tax on gross revenue, pursuant to 4 CMC Section 1301.

Regulation § 1202.4(b).

¶16 4 CMC § 1103 sets out the definitions for the entire division of the Code which imposes taxes upon the citizens of the Commonwealth. Section 1103 mandates that the terms be given the meaning set out in the definition "unless otherwise specifically expressed." Therefore, 4 CMC § 1103(c) must be used to interpret the provisions of the Gross Revenue Tax.

¶17 The broad language of the statute, however, cannot stand alone. The statutory definition of "business" in 4 CMC § 1103(c) requires that Finance must determine what activities will constitute a "business". Finance therefore promulgated Regulations § 1200 et seq. in compliance with 4 CMC § 1103(c) to interpret the Gross Revenue Tax.

¶18 The Pellegrinos argue, and we agree, that under Regulations §§ 1202.2 and 1202.3, Finance set forth examples of activities which would constitute a "business" under the BGRT which were all active, ongoing activities.[4] None of the examples are of passive activities, such as collecting dividend and interest income. "[A] rigid application of revenue measures is for the protection of the citizen by informing him in unambiguous terms as to the nature of his duty to pay taxes." NORMAN J. SINGER, SUTHERLAND'S STAT. CONST. §66.06 (5th ed. 1992). If passive activities were intended to be taxable under the BGRT, Finance was required to inform Commonwealth taxpayers through its regulations.

### B. Use of U.S. Law Provisions Proper

¶19 The Superior Court's use of provisions in the U.S. Internal Revenue Code of 1954 ("I.R.C.") were proper. As the trial court correctly found, the legislature did not expressly define the term "business" for Gross Revenue Tax purposes, but left the definition to the discretion of Finance which was required to develop definitions of terms generally defined by the legislature in accordance with the legislature's directives. Finance was ordered by the legislature to define terms using the I.R.C. and its interpretations as follows:

---

[4] Examples of activities that would constitute a business under the BGRT as set forth in the regulations include: (1) a finance company, (2) a department store, (3) a travel agency, (4) a pizza parlor, (5) a hardware store, (6) a movie theater, and (7) a grocery store. Regulation §§ 1202.2 and 1202.3.

In the event it is appropriate to further define the terms used in the [Revenue and Taxation] Act, the Director may further define the terms by regulation, taking into account the definitions and use of the terms in the United States Internal Revenue Code of 1954, as amended and the applicable regulations, thereto.

4 CMC § 1104. It was therefore appropriate for the Superior Court to look to the I.R.C. because the legislature instructed Finance to rely on the I.R.C. when further defining the terms in the Revenue and Taxation Act.

¶20 ■ Although the Internal Revenue Code does not define the phrase "trade or business", case law has definitively stated that collecting dividend and interest income is not participating in a "trade or business." The Supreme Court of the United States has held "investing is not a trade or business". *Whipple v. Internal Revenue*, 373 U.S. 193, 202, 83 S. Ct. 11, 10 L. Ed. 2d 288 (1963); *see also, Higgins v. Internal Revenue*, 312 U.S. 212, 61 S. Ct. 475, 85 L. Ed. 783 (1941). "No case of private investment management can, as a matter of law, constitute a business." *Helvering v. Highland*, 124 F.2d 556, 561 (4th Cir. 1942). We agree with the trial court that "[a]s stated in Regulation 1202.4(b) Finance's definition of "business" contradicts the U.S. Supreme Court's interpretation of the term (*see Whipple and Higgins supra*) and is inconsistent with the legislature's directive," Order at 6 (citing 4 CMC § 1104), and therefore, that definition cannot stand to take income from the interest and dividends of a private couple as gross receipts. To hold otherwise could place the Pellegrinos in violation of CNMI laws for failing to obtain a business license before engaging in the activity of personal investment.

### C. The Intent of the Legislature

¶21 ■ This Court's objective, in interpreting statutes which reflect an ambiguity, is to "ascertain and give effect to the intent of the legislature." *Estate of Faisao v. Tenorio*, 4 N.M.I. 260, 266 (1995). If the intent of the legislature is clear, the implementing agency must give effect to the statute as written. *Chevron U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L. Ed. 2d 694 (1984). On appeal from a summary judgment, we may determine, as a matter of law, the legislature's intent. *Camacho v. Northern Marianas Retirement Fund*, 1 N.M.I. 362, 369-370 n.5 (1990).

¶22 An indication that the legislature did not intend for the BGRT tax to apply to an individual's dividend and interest income is found in Public Law 9-22, enacted January 24, 1995, which amended 4 CMC § 1202 (b)(4). Under Public Law 9-22 a flat tax is specifically placed upon the interest and dividend income of individuals. PL 9-22, section 1 § 1202 (b)(4).[5] The addition of the new chapter in the tax law devoted to the taxation of an individuals's investment income, including dividends and interest, indicates an intent by the legislature to change the law.

¶23 ■ "Where changes have been introduced to a statute by amendment it must be assumed the changes have a purpose; by substantially amending a statute the legislature demonstrates an intent to change the preexisting law in all areas where there is a material change in the language of the act." *Louisiana Pacific Corp. v. Humboldt Bay Municipal Water District*, 186 Cal. Rptr. 833, 838 (Cal. Ct. App.1982) (citations omitted); *see also Fleming v. Kent*, 181 Cal. Rptr. 361, 363 (Cal.Ct.App. 1982) ("The rule establishing precedence of the more recent enactment is based upon a presumption that the legislature intended a change in the law when it enacted the new provision, a presumption strongly fortified when the more recent enactment is also the more specific."). By amending the statute to add the "Earnings tax" chapter, the legislature has indicated that it intended to change the preexisting law which did not provide for a tax on individuals' dividend and interest income.

¶24 Although Public Law 9-22 was later repealed by Public Law 10-80 on January 6, 1998, the stated purpose of the repeal only provides further evidence that the legislature did not intend to tax an individual's interest and dividend income through the BGRT. Section 1 of PL 10-80 states:

4 CMC section 1202(b)(4), as amended by Public Law 9-22, imposes an "earnings tax" on interest, dividends, rents, royalties or similar income earned in and derived from a person in the Commonwealth and received by a resident not in the course of carrying on a business." This tax, which was created by P.L. 9-22, imposes an undue burden on persons living on a fixed income, especially older people. It is therefore the purpose of this legislation to repeal the earnings tax currently imposed on interest type earnings in the Commonwealth.

PL 10-80, § 1.

¶25 The intent of the legislature shows the earnings tax was repealed because the legislature considered the tax on interest type earnings an undue burden for individuals.

---

[5] Section 1 § 1202(b)(4) stated: (b) For purposes of this Chapter, "earnings" shall mean:
(4) interest, dividends, rents, royalties, or similar income earned in and derived from a person in the Commonwealth and received by a resident not in the course of carrying on a business.
PL 9-22 section 1 § 1202 (b)(4).

The Commonwealth legislature unambiguously stated its purpose in repealing the earnings tax, and confirmed that a tax on an individual's interest and dividend income had only been imposed since the enactment of PL 9-22.

### D. Tax Statutes Interpreted in Favor of the Taxpayer

¶26 ██ A basic principle of statutory construction is that the language must be given its plain meaning. *Estate of Faisao v. Tenorio,* 4 N.M.I. 260, 265 (1995); *Nansay Micronesia Corp. v. Govendo,* 3 N.M.I. 12, 18 (1992). If the meaning of the statute is clear, the court will not construe it contrary to its plaining meaning. *Office of Attorney General v. Deala,* 3 N.M.I. 110, 117 (1992). This is a legal question and depends upon the Court's interpretation of the Gross Revenue Tax statutes.

¶27 When a tax statute is clear and unambiguous, interpretation of the law is not to be used to assist persons in evading their tax liability under the statute. SINGER, *supra* at § 66.02 (citing *Gregory v. Helvering,* 293 U.S. 465, 55 S. Ct. 266 (1935)). "[E]ffect must be given, if possible, to every word, clause or sentence of a statute." SINGER, *supra* § 46.06; *see also United States v. Menoshe,* 348 U.S. 528, 538-39, 75 S. Ct. 513, 519-20, 99 L. Ed 615 (1955). Here, the statute by its very language does not contain a clear definition of the all inclusive definition of "business". "Where there is reasonable doubt of the meaning of a revenue statute, the doubt is resolved in favor of those taxed." SINGER § 66.01 (citing *Smietanka v. First Trust & Savings Bank,* 257 U.S. 602, 66 L. Ed. 391, 42 S. Ct. 223 (1922)).

> In the interpretation of statutes levying taxes it is the established rule not to extend their provisions by implication beyond the clear import of the language used, or to enlarge their operation so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen.

SINGER § 66.01 (citing *Gould v. Gould,* 245 U.S. 151, 62 L. Ed 211, 38 S. Ct. 53 (1915)).

¶28 Accordingly, we must construe any ambiguity in the interpretation of the tax law in favor of the taxpayers.

### CONCLUSION

¶29 For the foregoing reasons, we hereby **AFFIRM** the Superior Court's order granting summary judgment in favor of the Pellegrinos. The assessment of $237,979 by the Secretary of Finance is quashed.